DAVID V. YEREX v. JOHN EINEDER.

*Surface water—Adjoining proprietors.*

A land-owner has no right, under any circumstances, to transfer his wet and untillable land to his neighbor by the digging of an artificial ditch, and carrying the water at once upon his neighbor's land, so that it will not overflow or percolate his own soil. *Gregory v. Bush*, 64 Mich. 42, 44.

Error to Lapeer. (Moore. J.)  Argued April 17, 1891. Decided May 8, 1891.

Case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Geer & Williams,* for appellant.

*W. W. Stickney,* for defendant.

MORSE, J.  The plaintiff owns the E ½ of the S. W. ¼ of section 22, township 8 N., of range 12 E., in Lapeer county. The defendant owns the W. ½ of the same quarter, same section, township, and range. It was claimed by plaintiff that the water from the lowlands of defendant—a marsh or swamp—was diverted from its natural flow, and carried upon the lands of plaintiff, to

his damage, by means of a ditch dug upon defendant's premises. The action was commenced in justice's court, where plaintiff had judgment. Upon appeal to the circuit court, verdict and judgment passed for the defendant. The plaintiff brings error.

The testimony showed that the swamp on defendant's land was a part or neck of a large swamp, which contained over 300 acres. The natural outlet of this swamp was into Little brook, and from thence into Mill creek, away from plaintiff's land. The testimony on the part of the plaintiff was to the effect that, although the neck of the swamp upon defendant's land came within about 20 rods of his premises, there was a ridge between such premises and the swamp, which in the absence of the ditch, prevented any water from the swamp overflowing, even in times of high water, upon plaintiff's land. After passing this ridge, the land of defendant sloped towards plaintiff's land, which, adjoining defendant's premises, was lower than the land of defendant. It was conclusively shown that there was never any natural water-course, with defined banks, running from the swamp to plaintiff's land, and that, when the ditch was first cut through this ridge, the defendant had trouble with the grantors of plaintiff, who claimed that the ditch damaged them. The ditch was cut through this ridge by the defendant, but did not extend upon plaintiff's premises, but stopped within a few rods of his line.

It was admitted by defendant that when plaintiff bought the premises he complained of the ditch, and it was agreed by them that the county surveyor should be employed to find out in which direction the water would naturally go, and defendant promised, if the surveyor found that the water naturally, by the levels taken, would run away from plaintiff's land, that he would fill up the ditch. The surveyor so found, and the defend-

ant filled up the ditch. But he afterwards opened it again, by plowing a furrow around the edge of the swamp, and then running a dead furrow at the edge of the swamp towards plaintiff's land. This furrow was deepened and widened by the action of the water, until it became a ditch, which it is admitted carried the water from the swamp upon the plaintiff's land so quickly that it did not soak or percolate into the soil of the lowland of defendant near the swamp, and by such ditch some acres of defendant's land were rendered tillable. There was no contradiction of the testimony of plaintiff that crops upon his land were damaged and partially destroyed by water flowing through this ditch from the swamp.

The defendant introduced testimony tending to show that, in a state of nature, the water from the neck of this swamp flowed upon plaintiff's land, especially in seasons of high water; that the defendant built a dam at the lowest place in the swamp, where this water ran towards plaintiff's land, which confined the waters more closely to the swamp; that the ditch did not quite come up to this dam, and that the water which ran into the ditch flowed around the dam, and thus reached the ditch; and that no more water went upon plaintiff's premises from the swamp, with the dam and ditch in existence, than flowed there before without them; and some of the witnesses testified that the quantity of water reaching plaintiff's land was less than it would have been had not the dam and ditch been constructed. But there was no testimony disputing the fact that this ditch collected the water, and precipitated it upon plaintiff in such a manner that it prevented a large amount of it from soaking into or spreading out over defendant's land, when without the ditch the water could not reach plaintiff's premises, except as it did so by spreading out and overflowing defendant's land, and until by such spreading and over-

flow it reached the land of plaintiff. In other words, it is practically undisputed in the record that the digging of this ditch carried the water from this swamp in a different and unusual manner from which it possibly could have reached it naturally, and that the water thus thrown upon it damaged his land, while it reclaimed some of defendant's.

The defendant testified that he made the ditch in the first place so that he would be enabled to work the rest of the place,—to cultivate it.

"Until I made the ditch, I could not work it. The ditch kept the water together, so that I could get a chance to work the rest of the land. * * * I couldn't work it till I cut the ditch, because it would overflow the whole place. * * * * * * * *

" Q. After that ditch was dug, wouldn't it take the water from the overflow of the swamp at once onto Yerex's land, and prevent it from overflowing on your land, and soaking him? ,

" A. Yes, sir.

" Q. And that was the object of digging the ditch, wasn't it, on your part.

"A. Yes; that was the object on my part."

Such being the record, it was error to permit the defendant to show that the digging of this ditch was an act of good husbandry. The defendant, as said in Gregory v. Bush, 64 Mich. 42, could not, "by artificial drains or ditches, collect the water of stagnant pools, sagholes, basins, or ponds upon his premises, and cast them in a body upon the proprietor below him, to his injury." And he could not reclaim his land by transferring the overflow from his land to that of plaintiff. "He cannot collect and concentrate such waters, and pour them through an artificial ditch, in unusual quantities upon his adjacent proprietor." Id. 44. What the defendant did,

by his own showing, was to transfer his wet and untillable land to his neighbor by the digging of an artificial ditch, and carrying the water at once upon plaintiff's land, so that it would not overflow or percolate his own soil. This he had no right to do under any circumstances, and whether or not it was good husbandry upon his part to do so was entirely immaterial. We are at a loss to understand how the jury, under the evidence and charge of the court, which was mainly correct, could have found for the defendant unless they were prejudiced by the admission of this testimony, which had no business in the case.

The court, we also think, should have given the plaintiff's second request, as follows:

"2. From the undisputed evidence in this case, the fact has been established that, by means of the dead furrow and ditch constructed by defendant, the water has been prevented from percolating through and settling in the lowlands of defendant next to the swamp, and has been caused to flow through the dead furrow and ditch onto plaintiff's lands in quantities at times greater than it would have flowed on plaintiff's lands if there were no ditch or dead furrow, and that said plaintiff was damaged thereby, and your verdict, therefore, will be for the plaintiff."

The judgment is reversed, and a new trial granted, with costs of this Court to plaintiff.

The other Justices concurred.