CHARLES OSTEN v. EDWIN JEROME.

*Waters and water-courses—Evidence—Surface water—Prescriptive right.*

1. A witness who is acquainted with the facts may express an opinion whether a drain is too small to carry the water conveyed into it by an artificial cut, and whether it was large

enough before the cut was made to convey the water naturally coming to it, for, while not a question calling for expert testimony, no amount of description would so fully possess the jury of the situation; citing *Laughlin v. Railway Co.*, 62 Mich. 220.

2. One has a right to ditch and drain and dispose of the surface water upon his land as he sees fit, but he cannot collect and concentrate such water, and pour it through an artificial ditch in unusual quantities upon an adjacent proprietor; citing *Gregory v. Bush*, 64 Mich. 37, 44.

3. A prescriptive right of drainage can only be exercised in the manner and to the extent that it has been used during the prescriptive period; citing *Chapel v. Smith*, 80 Mich. 100.

Error to Macomb.  (Canfield, J.)  Argued June 22, 1892. Decided October 4, 1892.

Case.  Defendant brings error.  Affirmed.  The facts are stated in the opinion.

*Eldredge & Spier*, for appellant.

*James G. Tucker*, for plaintiff.

MONTGOMERY, J.  The plaintiff recovered a verdict and judgment against the defendant for unlawfully flowing plaintiff's lands.

The plaintiff owned and occupied 40 acres in the N. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of section 31, and the W. $\frac{1}{2}$ of the W. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of section 32, in the township of Warren, Macomb county.  Defendant and his brother owned land on section 6, in the township of Hamtramck, adjoining section 31 on the south, and the S. $\frac{1}{2}$ of the S. $\frac{1}{2}$ of the S. W. $\frac{1}{4}$ of section 31, Warren.

The plaintiff offered testimony tending to show that near to the dividing line of 31, in Warren, and section 6, in Hamtramck, was a ridge or rise in the ground, which constituted a natural dividing line for the drainage of all the land in the vicinity; that along the line between the two townships a drain had been constructed some years before, called by plaintiff the "Base-Line Drain," and by

the defendant a "roadside ditch." This ditch was shown by the defendant to have existed for many years, and to have become somewhat obstructed; nevertheless, water still continued to flow through it. Two other drains were run into this ditch, the "Fulton Drain," so called, and the "Steffenhagen Drain." Each extended from a different point westerly of section 31, and emptied into the base-line drain, the one westerly of, and the other at, a point where a culvert had been constructed. The plaintiff's contention was that the waters carried into these drains had been provided for by the base-line drain, and also that the natural drainage of the lands westerly and south of section 31 was to the south and east. The defendant contended that there was an old drain or ditch extending northerly from the culvert before referred to, and intercepting the "Toll Drain," so called. The Toll drain commenced on section 31, on lands owned by the Jeromes, and extended north-easterly, intercepting another drain, called the "Extension of Bear Creek Drain," which empties into Clinton river. The plaintiff's testimony tended to show that the defendant caused a ditch to be dug from a point on the base-line drain, where the culvert exists, to the Toll drain, thus turning the waters carried by the Fulton drain and Steffenhagen drain from the base-line ditch into the Toll drain, causing the same to overflow, and to cause the damage to the plaintiff which is complained of.

Defendant claims that the damages were the result of the large flow of water caused by the unusual rains just prior to the flooding in 1889 and 1890, and also claims that the water diverted from his lands was such surface water as naturally came to the land, and such as good husbandry required to be collected and cast upon the lands. of the lower proprietor. The claim is also made by the defendant that the natural course of flowage from his land was in the direction of the Toll drain.

The record contains 70 assignments of error, and all of those which are relied upon in the brief of counsel have been fully considered. We do not consider it necessary, however, to refer to each assignment in detail.

1. After the opening from the base-line ditch to the Toll drain had been made, the plaintiff constructed a dam to stop the flow of water, and was permitted to testify that this was done by permission and under the direction of the township officers. We are unable to see how this testimony could have worked any prejudice to the defendant. It tended to show that the plaintiff had not acted in bad faith or wantonly in constructing the dam, and to some extent bore upon his credibility as a witness; and, while it is true that the township officers had not the power to determine upon rights between the parties, the instructions of the trial judge excluded any such view, and made the determination depend upon other considerations.

2. A witness for the plaintiff was permitted to testify that the Toll drain was not large enough to carry the water conveyed into it by the cut in question, and also that, before the cut was made, it was large enough to convey the waters which would naturally come to it. There was no error in this. It was proper for the witness to express an opinion upon the subject, as no amount of description would so fully possess the jury of the situation; nor was it a question calling for expert testimony; it was but another way of describing the capacity of the ditch. *Laughlin v. Railway Co.,* 62 Mich. 220.

It appears that, by a slip, the Steffenhagen drain was in one of the questions referred to as the " Stevens Drain," but this could easily have been corrected upon cross-examination if it was desired, and it would greatly reflect upon the intelligence of the jury to infer that they were misled by any such error. We are not disposed to reverse the

case on any such ground, particularly as no such specific objection was made to the testimony when offered.

3. The plaintiff offered testimony to show that the base-line ditch had afforded an outlet for the Fulton and Steffenhagen drains, and witness was permitted to testify that, if the obstructions which had formed in the space of 62 rods below the culvert were removed, it would still have afforded an outlet for the waters which were by the cut in question turned into the Toll drain, and thereby, in part, cast upon the plaintiff's lands. There was no error in this; it was only another way of showing the capacity of the base-line ditch. The jury were not led to infer that the defendant could be held responsible for the failure to clear out the base-line ditch. The court clearly charged as follows:

"I am asked to say to you by the defendant that the defendant cannot be held liable on account of any want of clearing out of the base-line ditch. Of course, that is true; he would not be legally called upon to clear it out and keep it open.".

4. The defendant presented various requests, asking the court, in substance, to charge the following propositions:

"That the possessors of lands into which a public drain has been constructed, and for the costs of which the lands have been assessed, have the same right of drainage into such public drain they would have were the drain a natural water-course; that this includes the right to conduct into it, in the reasonable cultivation and improvement of their lands, not only the surface water thereon naturally draining thereto, but also the surface water naturally draining thereto, brought thereon by the reasonable use, cultivation, and improvement of adjoining lands; and that the exercise of this right creates no liability to a lower proprietor, who may be thereby injured."

The instruction given by the court upon this subject was as follows:

"It appears that this Toll drain, and also the Bear Creek drain, were constructed by public authority, and, although all the proceedings to establish and construct them may not have

been strictly according to law, yet they constituted drains having a legal characteristic of natural water-courses, having been established as a neighborhood drain, and the occupants of lands through which they ran have the right to discharge therein the surface water which naturally flows thereto from their lands. They are not limited to drainage and discharge of surface water in the same precise manner as when the land was in a state of nature, unchanged by cultivation or improvement, but they may change and control the natural flow of surface water thereon, and by ditches, or otherwise, accelerate the flow or increase the volume of water which reaches the stream. If they do this in a reasonable way off their own premises, they exercise only a legal right, without incurring any liability to the lower proprietor. They have the right, in the reasonable use, improvement, and cultivation of their lands, to so drain the surface water; but this right is limited to such drainage as will not unreasonably increase the amount of water in the water-course beyond its capacity, causing it to overflow unnaturally onto the lands of others and injure them; and if by artificial ditches the water is collected, and so discharged into a water-course or drain, and so as to cause it to overflow and damage the lower proprietor, then the person doing this, or causing it to be done, is liable for the resulting injury."

We think this instruction was sufficiently favorable to the defendant, in view of the case made by the proofs. The defendant complains of the instructions on the ground that the defendant might be held liable, although the water drained into the Toll drain by the defendant was such only as came to his land from adjoining lands by reason of the usual cultivation and improvement thereof. There might be force in this contention, were it not for the fact that it appears that the water that was by this cut conveyed into the Toll drain included that collected and conveyed by the Fulton and Steffenhagen drains, which, as before pointed out, had for an outlet the base-line drain.

The learned circuit judge, in stating the defendant's claim, used the following language:

"He further claims that, whoever was responsible for its

construction [referring to the cut in question], no water was conducted by it onto the plaintiff's land but what would naturally have gone there had no artificial drains been made, and that this ditch complained of was one which he, as owner of the land along with his brother, had a right to construct, in the proper management and disposal of the surface water coming naturally on his land, and as reasonably called for by good husbandry. * * * If you find, under the above instructions, that this defendant was responsible for the cutting the ditch complained of, leading into the Toll drain, and waters that would not naturally flow there were thereby discharged into the Toll drain and Bear creek, causing the same to overflow and injure the plaintiff's lands and crops, your verdict should be for the plaintiff. If you find that the defendant caused or procured the ditch to be dug leading from the baseline to the Toll drain, and thereby caused water which would not naturally have flowed across the plaintiff's land to be discharged there, to his injury, or thereby caused water which would have flowed there naturally, but which had been artificially collected, to be discharged in such an unusual quantity as to be beyond the capacity of the Toll drain, and overflowing the same on plaintiff's land, he would be liable for the injury sustained by the plaintiff thereby."

We think these instructions embody the law as applied to the facts of this case. As was said in *Gregory v. Bush,* 64 Mich. 44,—

" One has a right to ditch and drain and dispose of the surface water upon his land as he sees fit; but he is not authorized to injure, by so doing, the heritage of his neighbor. He cannot collect and concentrate such waters, and pour them through an artificial ditch in unusual quantities upon his adjacent proprietor."

5. The evidence of the existence many years ago of the so-called "Ten-foot Drain," on the line of the cut in question, did not give the right by prescription to drain an increased amount of water into the Toll drain, to the damage of plaintiff. The charge upon this subject was as follows:

" You have heard in testimony the fact, as claimed by the plaintiff [defendant], that there were many years ago artificial

ditches constructed across this and other lands in the vicinity, leading into Bear creek; and it is claimed by the plaintiff [defendant] that this Toll drain was constructed upon the lines of one of these ditches, and that the lands of the defendant and his brother had been accustomed for many years— more than 20 years—to be drained by these artificial ditches. If this is so, it would give the right to the occupants of these lands to drain into these ditches, but the right must be exercised in a manner and to the extent that it had been used for this length of time, and any unreasonable or improper diversion of the water into them, exceeding their capacity and beyond what they would carry, and in the manner in which they have carried the water, would be an improper and wrongful act, and, if resulting in injury to the lower proprietor, the parties would be liable."

This instruction states the law as laid down by this Court in *Chapel v. Smith*, 80 Mich. 100.

6. It is claimed by defendant's counsel that there was no evidence connecting the defendant with the digging of the cut in question. An examination of the record discloses that there was testimony which, if believed by the jury, established his connection with the transaction.

A careful examination of the record discloses no error prejudicial to the defendant, and the judgment will be affirmed, with costs.

The other Justices concurred.