FINKBINDER *v.* ERNST.

SURFACE WATER—NATURAL FLOWAGE—LIABILITY FOR FLOODING.
  In an action for the wrongful flooding of lands with surface water, plaintiff claimed that, from time immemorial, a part, at least, of the water from his land had flowed naturally across the land of H., and thence across defendant's land; and that, owing to the erection of a dam by defendant upon his land, the water was set back upon the land of plaintiff. Defendant contended that the natural flowage of the water was across plaintiff's land, but that, by reason of the construction of a ditch or embankment by H., the water was diverted from its course, and turned upon the land of defendant; to prevent which he erected the dam in question. *Held:*
  (1) That, there being evidence to support plaintiff's theory, a request to direct a verdict for defendant was properly refused.
  (2) That, if defendant's claim was the true one, he was justified in barricading against the water, and there was no liability, though H.'s conduct was in the course of ordinary husbandry.[1]

Error to Washtenaw; Kinne, J.   Submitted April 4, 1901.   Decided May 7, 1901.

Case by Charles Finkbinder against Christian Ernst for the wrongful flooding of plaintiff's lands.   From a judgment for plaintiff, defendant brings error.   Reversed.

[1] For rights as to flow of surface water, see note to *Gray* v. *Mc-Williams*, ( Cal.) 21 L. R. A. 593.

*A. J. Waters* and *Arthur Brown* (*B. M. Thompson*, of counsel), for appellant.

*Lehmann Bros. & Stivers*, for appellee.

LONG, J. This action is brought to recover damages to plaintiff's land and certain crops growing thereon, caused by defendant's erecting a dam upon his own land, which plaintiff claims turned the waters which naturally flowed across defendant's land upon and across certain lands of plaintiff.

It is claimed in the declaration that prior to June, 1898, the defendant wrongfully, unlawfully, and wantonly, by artificial means, gathered the surface water falling and flowing upon his own lands, and caused the same to flow through such lands onto the land of one Hotrum, and thence onto and across the land of plaintiff, thus destroying certain crops growing thereon. It is the claim on the part of defendant that these surface waters from time immemorial had flowed in a valley or depression from his lands onto and across Hotrum's land, and thence across the lands of plaintiff, and that the dam was not the cause of the water's flowing upon the plaintiff's land, but that for many years it had flowed across plaintiff's land, and would have continued to flow in that direction, but that Hotrum, about the year 1894, dug a ditch on his own land from the junction of two water courses, which caused the water to flow on defendant's land, instead of following its original and natural flow across plaintiff's land; that there was a natural barrier to the west, which prevented the water from flowing in that direction and across defendant's land, and that, by Hotrum's ditch cutting through that natural elevation, the waters were turned upon defendant's land; that he took counsel upon the matter, and was advised that he had the right to erect the dam to keep the water from his land, and thus turn it back into its original channel.

At the close of the testimony, the defendant asked the court to direct the verdict in his favor. This was refused, and the refusal constitutes the first ground of error.

We think the court very properly left the matters in dispute to the determination of the jury. The plaintiff had introduced some testimony which tended to show that at least a part of the surface water had for many years flowed across defendant's land. The plaintiff's claim was that a part of the water had from time immemorial flowed across defendant's land, and that, by the erection of this dam, the whole of the waters from these lands were turned upon his lands. In addition to this, it does not appear that the record contains all the evidence given on the trial. There is no certificate by the court below that the record contains even the substance of the evidence.

There was some testimony given that Hotrum, in plowing and cultivating his fields, left an embankment, or furrow, which caused the waters to be turned from and across plaintiff's lands, and turned them in the direction of defendant's. The court charged the jury upon that subject as follows:

" If you find from the evidence that, in process of time, those water channels were changed, that, by reason of the natural and ordinary husbandry and tillage of the lands, the surface waters had changed their course, and that, where this dam is erected, the waters from the lands of the plaintiff naturally flowed over and spread upon the lower lands of the defendant, and that this flowage is not due to any other artificial means than ordinary husbandry and to natural causes, then the defendant would have no right to obstruct the flowage of those waters, even though the flowage had existed only for a few years."

We think this was error. The claim made by the defendant was that all these waters had from time immemorial flowed across the lands of the plaintiff; that none of them flowed across defendant's land until Hotrum had, by cultivation, made an embankment which prevented the waters from flowing across plaintiff's land, and precipitated them upon defendant's lands; and that, in view of that, he had a right to erect his dam to keep the waters from flooding his land. We know of no rule that would allow one to gather even surface water into one channel,

and precipitate it even upon lower lands, to the damage of those lands; but here the proposition is laid down to the jury that, though these waters had from time immemorial flowed across plaintiff's land, yet if Hotrum, in cultivation in ordinary husbandry, caused the waters to be diverted and precipitated upon defendant's land, he would not have the right to erect a barrier to keep the waters from his land, which had naturally and continuously flowed in another direction. In *Leidlein* v. *Meyer*, 95 Mich. 589 (55 N. W. 367), it was said: "It is the settled law of this State that the natural flowage of water from the upper estate is a natural servitude which the owner of the lower estate must bear." It has several times been held in this State that a landowner has no right, under any circumstances, to transfer his wet and untillable land to his neighbor by the digging of an artificial ditch, and carrying the water upon the neighbor's land, so that it will not overflow his own land. *Yerex* v. *Eineder*, 86 Mich. 24 (48 N. W. 875, 24 Am. St. Rep. 113); *Gregory* v. *Bush*, 64 Mich. 42 (31 N. W. 90, 8 Am. St. Rep. 797).

Some other questions are raised which we do not deem it important to discuss.

Judgment was rendered in the court below in favor of the plaintiff. For the error pointed out, that judgment will be reversed, and a new trial ordered.

The other Justices concurred.