# JANUARY TERM, 1902.[*]

## BREEN v. HYDE.

1. **DRAINS—FLOODING LAND—EVIDENCE—EXCESSIVE RAINS.**

   In an action for flooding land, plaintiff claimed that defendants, by means of ditches, collected water upon their lands, and also the adjoining highway, and projected it upon his land, destroying his crops. Defendants claimed that the injury was caused, not by their act, but by an unusually wet season. *Held*, that it was error to exclude evidence in rebuttal tending to show that the land was flooded and the crops as badly destroyed in succeeding years not having an excessive rainfall

2. **SAME—GOOD FAITH—GOOD HUSBANDRY.**

   Neither the absence of bad faith nor the necessity of good husbandry gives one the right to collect water upon his own land, and pass it through artificial channels, in unusual quantities, upon an adjacent proprietor.

3. **SAME—HIGHWAY AUTHORITIES.**

   Highway authorities have no right to cut drains the necessary result of which will be to flood the lands of individuals, even if the drain is no larger or deeper than necessary to properly construct the road.

4. **SAME—EVIDENCE—MITIGATION OF DAMAGES.**

   Testimony was admissible to show the amount of ditching required to remove the water from plaintiff's land, as affecting the question of damages, under the principle that every man is bound to make the injury he suffers as light as possible.

5. **SAME—CONNECTING DEFENDANT WITH INJURY.**

   Where there was testimony by one of the defendants that he put culverts in the highway, and dug a ditch on his land for the purpose of collecting the surface water, and this ditch was connected with the highway ditch, the court will not say there was no evidence connecting him with the trespass.

[*] Continued from Vol. 129.

Error to St. Clair; Vance, J. Submitted January 9, 1902. (Docket No. 49.) Decided March 18, 1902.

Case by Daniel Breen against John Hyde and Christopher Brandon, impleaded with Thomas Wrinn, for damages caused by flooding plaintiff's land. From a judgment for defendants, plaintiff brings error. Reversed.

*A. E. Chadwick* and *J. B. McIlwain*, for appellant.

*Phillips & Jenks*, for appellees.

MOORE, J. This suit was commenced in 1897. It was tried in 1899 by a jury. The court directed a verdict in favor of Thomas Wrinn. The jury found a verdict in favor of the other defendants. The case is brought here by writ of error.

A reference to the plat will aid in understanding the situation. The plaintiff is the owner of the E. ½ of the S. E. ¼ of section 26. Mr. Hyde has a 40 acres directly south of

this, and separated from it by a highway. Mr. Brandon owns the W. ½ of the N. E. ¼ of section 35. It is plaintiff's claim that, by means of ditches, Mr. Brandon and Mr. Hyde collected water upon their lands, and also from the highway, and projected it upon his land, so that his land was flooded and his crops destroyed. This is denied by defendants. They say that, in the course of nature, the water would pass from their lands over plaintiff's land, and that the injury was caused, not by their act, but by an unusually wet season.

The declaration, after setting out what was done by defendants, avers:

"And, by means of the construction of the said culverts and ditches aforesaid, the said land of plaintiff became submerged during the season for cultivation, and has been rendered unfit for cultivation and worthless; and, to wit, during the year 1895 and 1896, solely by means of said wrongful acts of defendants in collecting and delivering such large and increased quantities of water on plaintiff's said lands, about 30 acres of crops of said plaintiff were totally destroyed, and said plaintiff was wholly unable to go upon said land to remove or care for said crops, consisting of potatoes, corn, wheat, and grass, by which said plaintiff lost the whole thereof, of the value of $500.

"And the plaintiff alleges that because of the bringing of such large and increased quantities of water upon his land, and flooding the same, and remaining thereon, his land has become sour and unfit for cultivation, and said plaintiff has wholly lost the use of the same, or a large portion thereof, and the same has been greatly depreciated in value, to his great damage, in the sum of $1,000.

"And the plaintiff alleges that the continuance of said wrong, and the flowing of water from said artificial drains, constructed by said defendants on their lands as aforesaid, through said culvert, and unto the lands of said plaintiff, will entirely destroy said land for cultivation and use, and render it wholly worthless and valueless to said plaintiff, and permanently destroy the same, to the damage of said plaintiff of $2,000."

It is alleged the judge erred in excluding the testimony of plaintiff that his land was flooded and crops destroyed as badly in 1897 and 1898 as in 1896, as tending to

show permanent and continued injury from the continuing conditions, and to rebut the claim of defendants that the cause was excessive rainfall in 1896. It was claimed by defendants that the injury was caused, not by their act, but by the excessive rainfall of 1896.. We think it was competent to show, by way of rebuttal, that in the seasons of 1897 and 1898, when there was not an excessive rainfall, the same condition was produced on the land of plaintiff.

Portions of the charge require examination. The jury were told, among other things:

"I do not understand that the upper proprietor is forbidden to dig surface drains upon his lands. I understand that it is his right to construct such drains as he in good faith believes to be necessary in the interest of good husbandry, so long as he does not drain a larger area upon the land below than naturally flowed there, and so long as he does not construct drains sufficiently large to accumulate the water in unreasonably large quantities, and cast them in a body on the land below, to the injury of the land. And if he does no more than that, I understand he is not liable.    *    *    *

"Now, in determining whether these ditches upon the line between Brandon and Hyde and on Hyde's land were constructed there in good faith, and with no purpose of concentrating the water in large and unreasonable quantities and casting it upon Breen's land, you have a right to take into consideration the lay of the land, the fall that appears to be from the south to the north in that locality, the size of the ditches, the amount of water they would carry off, the current that was in those ditches, so far as the testimony shows it, and take all the surrounding facts and circumstances into consideration, and from that determine whether, in the construction of these ditches, they were made larger than was reasonable or proper in the interest of good husbandry, taking the whole surrounding facts into consideration. If you find that they were not, and that they did not drain a larger area upon the plaintiff's land than naturally flowed there, and they did not concentrate the water in unusual or large bodies and cast it upon the land of plaintiff, to his injury, then the defendants cannot be held liable for the construction of these ditches, even though the water may have run down these ditches instead of over the surface of the land."

We think these portions of the charge are contrary to the decisions of this court as found in *Boyd* v. *Conklin*, 54 Mich. 583 (20 N. W. 595, 52 Am. Rep. 831); *Yerex* v. *E ineder*, 86 Mich. 24 (48 N. W. 875, 24 Am. St. Rep. 113); *Osten* v. *Jerome*, 93 Mich. 196 (53 N. W. 7); *Leidlein* v. *Meyer*, 95 Mich. 586 (55 N. W. 367). The cases in 86 Mich. 24 (48 N. W. 875, 24 Am. St. Rep. 113), and 93 Mich. 196 (53 N. W. 7), contain so full a discussion of this feature of the case that we do not deem it necessary to repeat the discussion here.

The judge also said:

" When the public authorities constructed that highway between Breen and Hyde, they had a right to construct it so that it would be passable, and it was their duty to do so; and if, under the circumstances, it became necessary to turnpike that road at that point, and put ditches on the side, to keep it dry and passable, they had a right to do it. It was the duty of the township authorities, when they constructed that road, if the water flowed from one side to the other,—no matter which way,—to put in culverts there to accommodate that flow; and, had they not done so, the township would be responsible for any damage that might be occasioned by the highway damming back the water.

"If, in your opinion, when this highway was constructed between Breen and Hyde, it was raised no higher above the surface, and the ditches were dug no larger or deeper, than was necessary to properly construct the road, and that the culverts were no larger than were necessary for the water that might flow there, even by storms,—because they must construct them large enough to accommodate any water that comes there,—then I say to you that the construction of that road cannot be used as a means of giving Breen any advantage over the proprietors above him. Neither can it give him any right to damage from them, if that fact were standing alone. On the other hand, if Brandon and Hyde were responsible for the manner in which that road was constructed, and it was turnpiked higher than there was any necessity for, and the ditches on the sides were dug deeper and larger than the needs of the locality, and that the purpose and object of that was to concentrate the water in large quantities there, to the detriment and injury of Breen below, they would be responsible for any injury that follows."

This statement of the law is not in harmony with *Cubit* v. *O'Dett*, 51 Mich. 347 (16 N. W. 679), where it was said:

"Highway authorities have no more right than private persons to cut drains the necessary result of which will be to flood the lands of individuals. This was shown in *Ashley* v. *City of Port Huron*, 35 Mich. 296 (20 Am. Rep. 622 [note], 24 Am. Rep. 552), where many authorities are referred to. The highway overseer, no doubt, has a discretion in deciding how and where he will expend highway labor; but it is a discretion limited by the rights of individuals, and when he invades those rights he becomes liable. *Tearney* v. *Smith*, 86 Ill. 391. And when he is liable for a lawless act, all his assistants are liable with him for the consequent injury. Story, Ag. §§ 311, 312; *Brown* v. *Howard*, 14 Johns. 119; *Coventry* v. *Barton*, 17 Johns. 142 (8 Am. Dec. 376); *Fiedler* v. *Maxwell*, 2 Blatchf. 552 (Fed. Cas. No. 4,760); *Tracy* v. *Swartwout*, 10 Pet. 80; *Smith* v. *Colby*, 67 Me. 169. This rule sometimes, when the agent has acted in good faith and without knowledge of the want of legal authority, may seem to operate oppressively; but it is a necessary and very just rule notwithstanding, and full protection of the citizen in his legal rights would be impossible without it. Absence of bad faith can never excuse a trespass, though the existence of bad faith may sometimes aggravate it. Every one must be sure of his legal right when he invades the possession of another."

It is said the court erred in admitting testimony as to the amount of ditching required to remove this water through the Kennedy drain, because it assumed a right in defendants to artificially ditch all their waters onto and through him, and his duty to care for them and ditch them on his lower neighbors without their consent. Under the principle that every man is bound to make the injury he suffers as light as possible, we think this testimony was admissible as affecting the question of damages. See *Cubit* v. *O'Dett*, *supra*.

It is insisted that, as there is no testimony to connect Mr. Hyde with this trespass, the case should be affirmed as to him. In view of his testimony that he put the cul-

verts in the highway in 1894, and that he dug the first ditch on his land in 1894 for the purpose of collecting the surface water, and this ditch was connected with the highway ditch, we do not think it can be said there is no testimony connecting Mr. Hyde with the injury, if there was one.

For the reasons stated, the judgment is reversed as to defendants Hyde and Brandon, and a new trial ordered.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.