VILLAGE OF TRENTON *v.* RUCKER.

1. WATERS AND WATERCOURSES—EASEMENTS AND SERVITUDES—FLOWING LANDS—DRAINS.

Residents of villages are subject to the rule, applicable to rural localities, that their land is bound to receive the flow of surface water from adjacent higher land, coming in substantially its natural amount and condition.[1]

2. SAME—MUNICIPAL CORPORATIONS—VILLAGES.

Municipalities may not collect and discharge surface waters in unnatural volume upon private land.

3. EQUITY — PLEADING — AFFIRMATIVE RELIEF — PRAYER OF ANSWER.

Without a prayer in defendant's answer for affirmative relief, the court of equity cannot enjoin complainant from discharging upon his real property waters artificially collected.

[1] For rights as to flow of surface water, see note to *Gray* v. *McWilliams* (Cal.), 21 L. R. A. 593.

4. Waters and Watercourses—Easements—Villages.

In a village which has no sewage system, a property owner may not interfere with the natural flow of water across his lands not in process of improvement, and may be enjoined by the village from interfering with the flowage of surface water which has from time immemorial drained across his land.

Ostrander, Moore, and Stone, JJ., dissenting.

Appeal from Wayne; Murphy, J. Submitted February 10, 1910. (Docket No. 130.) Reargued July 1, 1910. Decided July 14, 1910.

Bill by the village of Trenton against J. Dean Rucker to restrain defendant from interfering with certain drains. From a decree for defendant, and an order adjudging complainant to be in contempt for violation of said decree, complainant appeals. Reversed, and decree entered for complainant.

*Lehman, Riggs & Lehman,* for complainant.

*Frank W. Atkinson,* for defendant.

Defendant is the owner of a lot in the village of Trenton, lying between Front street and the Detroit river, 82½ feet by 160 feet. The block lying immediately to the northwest of defendant's lot and across Front street slopes somewhat to the south and east. The water collecting on said block has, for a great many years, run in a southeasterly direction, crossing Front street in front of defendant's lot, and thence across defendant's lot to the Detroit river. Defendant had been the owner of the lot in question about nine years before the filing of the bill herein. Some time prior to his purchase thereof, the water, collecting on the block to the northwest, instead of being permitted to find its way to defendant's lot over the surface, was carried by an underground drain to Front street, and thence across Front street, under the surface of the street, to defendant's lot, whence by a natural channel it reached

the river. About eight years ago, the complainant, by agreement with the defendant or his agent, put in a six-inch tile drain across defendant's lot, from Front street to the river, to carry said water, the tile being laid in the old channel. Just before the village filed its bill of complaint, defendant stopped up the drain, causing the water to back up on Front street. This he did because, he says, he learned that a sewer had been connected with the drain higher up by one Stokes, and it was his understanding that surface water only should be carried through it. Thereupon the bill of complaint herein was filed, praying for an injunction against defendant restraining him from obstructing said drain. A temporary injunction was issued. Defendant answered, admitting that from time immemorial the surface water collecting on the block, lying to the northwest of his lot, had reached the river by running across his land. He asked that the injunction be dissolved, and the bill of complaint dismissed, but prayed for no affirmative relief. After a full hearing in open court, and on March 5, 1909, the following decree was entered:

"(1) That the bill of complaint filed in this cause be and the same is hereby dismissed.

"(2) That the injunction heretofore issued in this cause be and the same is hereby dissolved.

"(3) That the said complainant remove from the property of said defendant the underground system of drainage, placed in said property of said defendant by virtue of the said license, and discontinue the use of said property of said defendant for the purpose set up in said bill of complaint, or for any purpose whatsoever, within ninety days from the date of this decree."

After the entry of said decree, complainant took out the crocks it had laid in defendant's land, and compelled all sewers to be disconnected with the drain. Thereafter the surface water continued to flow through the box or pipe laid across Front street, and upon defendant's land, to the river through the ditch where the pipe had lain, as it had done since time immemorial, except that by the construction of a new drain from the center of the block north to

Pine street a considerable portion of the surface water was diverted in another direction. Defendant then petitioned the circuit court for an order holding the complainant in contempt, claiming that under the third clause of the decree above quoted, the complainant was bound to prevent any surface water from passing on or over defendant's land. After a full hearing on the contempt proceeding, the court held the complainant guilty of contempt, because it had failed to prevent all the surface water from passing onto and over defendant's land. Complainant appeals.

BROOKE, J. (*after stating the facts*). In what we have to say hereinafter, it will be borne in mind that the complainant village has no sewage system. That it is not claimed by defendant, that by reason of urban improvements, raising, grading streets, etc., therein, the natural course of the surface water has been diverted upon his land, or that the volume thereof has been increased by any act of complainant. He specifically admits in his answer that the water in question has flowed across his land from time immemorial. Under the circumstances disclosed by the record in this case, therefore, we are of opinion that the rules of law established by this court, relative to the care of surface water in rural districts, must control. A contrary holding would, it seems to us, place it within the power of any resident of a village to compel the village to enter upon the construction of a sewage system, whenever he happened to become the owner of a lot which from time immemorial had borne the servitude of carrying surface water from adjacent lands. Villages ordinarily are not wealthy enough to undertake expensive public works, and residents therein must be presumed to have taken up their homes there with a knowledge of this fact. In villages, taxes are lower and conveniences are fewer than in towns and cities. Those who choose to live in villages must bear the ordinary inconveniences incident to such residence. Treating this case as falling within the rural, rather than the urban, class, there is no difficulty in

holding that the defendant is bound, under our decisions, to receive the flow of surface water from the adjacent higher land, coming in substantially its natural amount and condition. *Boyd* v. *Conklin*, 54 Mich. 583 (20 N. W. 595, 52 Am. Rep. 831); *Rice* v. *City of Flint*, 67 Mich. 401 (34 N. W. 719); *Osten* v. *Jerome*, 93 Mich. 196 (53 N. W. 7); *Horton* v. *Sullivan*, 97 Mich. 282 (56 N. W. 552); *Finkbinder* v. *Ernst*, 126 Mich. 565 (85 N. W. 1127); *Cranson* v. *Snyder*, 137 Mich. 340 (100 N. W. 674). See, also, *Gregory* v. *Bush*, 64 Mich. 37 (31 N. W. 90, 8 Am. St. Rep. 797).

It seems to be settled law in several other States that municipalities are not obliged to provide artificial drainage for surface waters. They may not, however, collect them and discharge them in unnatural volume upon private lands. *Lynch* v. *Mayor, etc., of New York*, 76 N. Y. 60 (32 Am. Rep. 271); *Davis* v. *City of Crawfordsville*, 119 Ind. 1 (21 N. E. 449, 12 Am. St. Rep. 361); *Gilfeather* v. *City of Council Bluffs*, 69 Iowa, 310 (28 N. W. 610); *City of Atchison* v. *Challiss*, 9 Kan. 603; *Collins* v. *City of Waltham*, 151 Mass. 196 (24 N. E. 327).

Clause 3 of the decree in the court below was, in any event, unwarranted by the pleadings. Defendant sought no affirmative relief. *Thayer* v. *Lane*, Walk. Ch. (Mich.) 200; *Smith* v. *Rumsey*, 33 Mich. 183; *Booth* v. *Thompson*, 49 Mich. 73 (13 N. W. 363); *Andrus* v. *Scudder*, 120 Mich. 502 (79 N. W. 794). But this is unimportant, as we are of opinion that complainant was entitled upon the hearing to a decree enjoining defendant from interfering with the natural flow of surface water over his premises, such decree to become operative only when complainant had caused all sewers (*i. e.*, drains connected with water-closets) to be disconnected with said drain.

Inasmuch as the proceedings upon contempt, subsequent to decree, show that nothing but surface water at

that time passed through the drain, a decree will be entered in this court to that effect, with costs of both courts.

BIRD, C. J., and HOOKER and MCALVAY, JJ., concurred with BROOKE, J.

BLAIR, J. Inasmuch as the defendant was not seeking to reasonably improve his property in accordance with the urban rule, I concur in the foregoing opinion.

OSTRANDER, J. (*dissenting*). There are two statements in the opinion of Mr. Justice BROOKE, controlling of the conclusion which he reaches, which I think find no support whatever in the record. Those statements are:

"In what we have to say hereinafter, it will be borne in mind that the complainant village has no sewage system. That it is not claimed by defendant that by reason of urban improvements, raising, grading streets, etc., therein, the natural course of the surface water has been diverted upon his land, or that the volume thereof has been increased by any act of complainant. He specifically admits in his answer that the water in question has flowed across his land from time immemorial."

The land is not in a state of nature. It is in an incorporated village, which, according to the last census, had upwards of 1,200 inhabitants. The block in question is built upon with houses and barns. The village has a system of underground drainage, adopted and constructed by village authority. This is expressly charged in the bill of complaint, which further charges that the water collected in this system is discharged upon the land of defendant by consent of the owner thereof. What is charged in the bill, and what defendant specifically admits, is not that *the water in question* has flowed across his land from time immemorial, but that—I quote from the bill—"from time immemorial the land * * * has been drained *when not interfered with artifically*" across the land of defendant. It is not claimed on the part of the village that it ever acquired the right to discharge upon defend-

ant's land the water collected by its drainage system except by consent of the owner of the land, and it appears from the statement of one of the solicitors for complainant, found in the record, that no question was involved at the hearing " except whether or not this," the alleged consent of the owner, " was a license or whether we had a right to maintain it because we went upon that by consent." The court found, upon abundant and apparently undisputed testimony, that the village had a mere parol license from the owner of the land to so discharge water on the land, and that the license had been revoked. As the bill charged the owner with interfering with the discharge of water on his premises, and prayed for a perpetual injunction to restrain such interference, it would seem that a decree dismissing the bill was properly entered. The revocation of the license terminated the rights of the village in the premises. *Nowlin Lumber Co.* v. *Wilson,* 119 Mich. 406 (78 N. W. 338).

But it was intimated on the argument that complainant did not rely solely upon the alleged license. If we were to assume, in the face of the charge in the bill, that the village expended large sums of money in constructing a system of artificial drainage, in reliance upon an alleged consent of the owner of the property to receive the water so collected, that the village intended also to assert a right to have the waters go as they would have gone if the land was in a state of nature, the complainant has no better case. Whether the rule applicable to rural property and conditions should be applied in this case does not depend upon the simplicity or complexity of the system of drainage established in the village of Trenton. The court may, and should, take judicial notice of the fact that after the building of a village upon land the land is no longer in a state of nature, and there is and can be of necessity no such thing in fact as that natural percolation and flow of surface water which existed before the village was built. It is said by this court in *Boyd* v. *Conklin,* 54 Mich. 583 (20 N. W. 595, 52 Am. Rep. 831):

"A number of the most striking cases cited by plaintiff's counsel in support of his appeal, as laying down the broadest doctrine, and as relied upon in a good share of his other citations, were cases where the lands were in towns and cities, and the erections or acts in litigation referred to the uses of that class of property. And in relying on these it was claimed that there was no substantial foundation for any distinction between urban and rural property. There is no question but that such a distinction is recognized in the civil-law authorities referred to on the argument, as well as in several of the cases cited. The distinction is one of substance and not arbitrary. As already suggested, the adjoining owners owe mutual duties—the one to receive the natural flow, and the other not to injuriously change its conditions. It is obvious that the laying out of town streets and the multiplication of buildings cannot avoid making serious changes in the surface of the ground and in the condition of surface water. Grades must usually be established for streets and sidewalks, and pavements and other surface changes are usual, in addition to the walls of buildings which, with their embankments, must obstruct or change the drainage. It is almost universally expected and provided that sewerage and drainage shall be regulated by some municipal standard. There cannot be towns without changing the face of the land materially. And where the same rule has been applied to towns as to the country, it has, in some cases at least, been done expressly, because in the circumstances of the record the particular land in question had remained under rural conditions. If—as seems to be true —some decisions ignore the distinction, they depart from the old rule, and cannot be maintained as harmonious with the general line of authority, unless on special facts which do not justify their broad *dicta*."

Whether in any case, as between proprietors of adjoining lands in a village, the rule applicable to rural property should be held to apply, we need not determine. Here the village—the municipality—is asserting the right to flow the land of one member of the community with water gathered in underground conduits, for the benefit of the community. This it may not lawfully do.

In so far as the court below held that the village had no right to discharge, by means of its artificial drainage, water

upon the lands of defendant, and therefore dismissed the bill of complaint, the decree is right and should be affirmed. But the decree goes further than this. The purpose of the bill has been stated. The decree requires the village to remove from defendant's property the underground tiling or crocks placed there by the complainant under the license from the owner, and to discontinue the use of the property for the purpose set up in the bill of complaint or for any purpose whatsoever within 90 days from the date of the decree. The village has removed the tiling or crocks from defendant's premises, but it appears by the record in certain contempt proceedings instituted by the defendant, that the village has not ceased to cast the water from its drainage system upon the defendant's land. For this the court held the village to be in contempt. The village then appealed from the original decree. The action of the village authorities has made the requirement that the tile be removed from defendant's land unimportant. As to the other requirement, namely, that the village, in 90 days, discontinue the use of defendant's premises, the decree requires only what the complainant ought to do. If the time allowed was too short, it should have applied for some modification of the decree. Its right to use the premises being denied, it should stop using them. Defendant asked for no affirmative relief in the answer, and did not ask in the court below or in this court to amend the answer. We therefore are constrained to limit the relief by decree to the dismissal of the bill. But, in view of the considerations above stated, we decline to award any costs to appellant.

MOORE and STONE, JJ., concurred with OSTRANDER, J.