## PEACOCK *v.* STINCHCOMB.

1. WATERS AND WATERCOURSES—ADJACENT LANDOWNERS—FLOODING LANDS.

    The right to drain or dispose of surface water on land cannot be exercised by concentrating and pouring it, by means of an artificial ditch or drain, in unusual quantities and velocity greater than would be natural, upon adjacent property.[1]

2. SAME—PRESCRIPTION.

    Prescriptive rights can only be exercised in the manner and to the extent that they have been used during the prescriptive period. ·

3. SAME.

    Evidence, in a suit for an injunction to restrain a defendant from maintaining a drain, reviewed, on appeal, and *held*, to warrant the trial court in entering a decree restraining the flowing of complainant's real property.

Appeal from Ionia; Davis, J. Submitted October 14, 1915. (Docket No. 94.) Decided December 21, 1915.

Bill by Thomas L. Peacock against Theseus E. Stinchcomb and another for an injunction. From a decree for complainant, defendants appeal. Affirmed.

*Rosslyn L. Sowers,* for appellants.

*Hawley & Eldred,* for appellee.

STONE, J. In this cause the bill of complaint was filed to obtain an injunction restraining defendant Stinchcomb from maintaining a certain drain constructed by him, and from discharging waters through the same upon the lands of the complainant, and re-

---

[1] On the right to flow of surface water, see note in 21 L. R. A. 593.

    On the right to drain surface water into a watercourse, see note in 24 L. R. A. (N. S.) 903. ·

straining each and both of said defendants from constructing any drain upon the lands of defendant Chamblin, whereby the waters from his land would be brought, or carried, therefrom upon the lands of said complainant.

Counsel have not furnished us with any plat or map of the premises involved, rendering it necessary to refer to descriptions thereof and conditions at considerable length.

In 1904 complainant purchased, and at the hearing below was the owner in fee of, the southeast quarter of the southwest quarter of section 35, less 10 acres in the northwest corner thereof, in the township of Sebewa, Ionia county. In 1908 he purchased another 40 acres, being 240 rods long by 26 rods and 11 feet wide, extending from the northeast part of said first-described land north to the north section line of said section. One William F. Sayers had been for 30 years the owner of 80 acres lying immediately east of and adjoining complainant's said land. Extending east and west along the south line of complainant's land, and the land of said Sayers, is a county line road between the counties of Ionia and Eaton. Directly south of and across the said highway from said Sayers' land and in the township of Sunfield, defendant Stinchcomb owns 40 acres of land extending south of said highway a distance of 160 rods, being what may be called "a long 40." He also owns 80 acres of land extending lengthwise west of the south portion of the long 40 above mentioned; his land taken together being an L-shaped parcel. One Mrs. Rumfielt owned 40 acres directly south from complainant's land, and lying between said highway and said 80-acre parcel of defendant Stinchcomb. Monroe Stinchcomb, a brother of defendant Stinchcomb, has for many years owned a parcel of land lying directly east of, and adjoining the long 40 of said defendant Stinchcomb. The right of

way of the main line of the Pere Marquette Railroad, from Grand Rapids to Detroit, extends along and adjoins the south line of defendant Stinchcomb's said land, and south of this right of way are the lands of defendant Chamblin.

Complainant's 30-acre lot above described is low land, as is also a part of the 40-acre lot lying north. Said low land is difficult of drainage, and has never been adequately drained. A public drain, known as the Bliss and McClelland drain, was constructed about 30 years ago, and extends for some distance through the township of Sebewa. This drain does not touch complainant's land, and the nearest it comes to it is on the farm adjoining on the west owned by one Lenhart. This drain does not furnish an outlet for the water that accumulates on complainant's low land, nor is it of sufficient depth to afford an outlet to a drain across complainant's low land, adequate to drain the same. After the construction of the Bliss and McClelland drain, and about 28 years ago, several landowners in the neighborhood joined in digging a private drain, commencing at the south side of the county line road, at a point about on the line between the land of complainant and said Sayers, and extending north through a culvert across the road, and thence along said line between complainant's and said Sayers' land, but on said Sayers' side of said land, a distance of about 50 rods. Later this drain was extended by running it thence diagonally in a northwesterly direction to and across the land of complainant and said Lenhart, a distance of about 100 rods, until it intersected said Bliss and McClelland drain on said Lenhart's land. This work was done and said extension constructed by said Sayers and one Halliday, who then owned complainant's 30-acre parcel, and about the year 1896. About the time the ditch was dug from the highway along said Sayers' west line, as above stated, a

tile drain was constructed by the Stinchcombs, extending from the culvert across the highway above mentioned along the south side of said highway in an easterly direction about 40 rods to a sag-hole on defendant Stinchcomb's lands, nearly opposite and across the road from said Sayers' residence, where it ended. About the same time, said Sayer constructed a three-inch tile drain extending from a cat-hole on his land in front of Monroe Stinchcomb's house, in a southerly direction to and across the road, where it intersected and emptied into the tile drain last above mentioned. Afterwards, and in the year 1902, Monroe Stinchcomb extended the tile drain above mentioned from the cat-hole on defendant Stinchcomb's land, where it terminated, in a southerly direction across defendant Stinchcomb's land, and upon his own land, a distance of 80 rods. This drain was constructed, in part of 6, in part of 4, and in part of 3 inch tile. It is claimed that an old wooden or puncheon drain had been constructed about 30 years ago, along the same line, but had been filled up and ceased to work at the time of putting in this tile drain.

About 18 or 19 years ago a drain extended westerly from the culvert across said highway above referred to, and along the north side of said Rumfielt land adjacent to the highway, a distance of about 12 rods, then turning to the south, nearly at right angles, was continued a distance of about 50 rods to a piece of woodland on said Rumfielt's land. It was constructed about 2 feet deep to a ravine. It is claimed that the water collected in this ravine, and was thence carried down said ditch to and across said highway and settled on the lands of complainant. Later Asa Stinchcomb, defendant's father, who then owned the land now owned by defendant Stinchcomb and Monroe Stinchcomb, extended a tile drain from the upper end of the Rumfielt drain across the Rumfielt land in a southeast-

erly direction about 20 rods; thence east by an open drain, a distance of about 40 rods, and entirely across the lands of defendant Stinchcomb and to and upon the land of Monroe Stinchcomb. The point where this drain crossed the line between the Rumfielt land and the land of defendant Stinchcomb is 65 to 70 rods south of said road, and from thence it runs in a southeasterly direction. About 90 rods south of the road on the long 40 of said defendant Stinchcomb there is a piece of woodland which extends back to the south to within 30 or 40 rods of the south line of said long 40. From the point where the tile drain, last mentioned, reaches the north line of this woodland, an open drain, extending south through the woodland, and through a clearing south thereof, to the south line of this 40-acre parcel, about midway of said land, was afterwards constructed. Its depth at the south line of said 40-acre parcel was only six or eight inches. South of defendant Stinchcomb's long 40 and south of the railroad track, and at a point south of and opposite the terminus of this old drain on the Stinchcomb land, there is a large, deep cat-hole, or pond, on the land of defendant Chamblin, from which pond there is an old drain extending to said Stinchcomb's drain. When the railroad was constructed, a tile was put through the railroad bed to permit the water to flow through from the pond to the said Stinchcomb drain.

From the terminus of the Rumfielt drain, on the Rumfielt land, as above described, defendant Stinchcomb also had another ditch extending to and upon his 80-acre lot, located south of and adjoining the Rumfielt land. After the construction of the Rumfielt drain, and at a point 30 or 40 rods south of the highway, and where it was 15 or 20 rods from said drain to the line, a puncheon drain was constructed from the Rumfielt drain to the Stinchcomb land, but no further. It is the claim of complainant that these several ditches

189 Mich.—20.

upon the lands of Monroe Stinchcomb, and of the defendants, comprised the system of drainage of lands owned by these parties until the fall of 1913, and that those drains did not afford sufficient drainage for their said lands, and especially for the lands of defendant Stinchcomb, which contained several basins and low places where water collected and stood at times at considerable depth.

It was in evidence that in the fall of 1913 defendant Stinchcomb, without the knowledge or consent of complainant, constructed a new tile drain, extending from the south line of his long 40 northerly, and west of the center line of said 40, to the above-mentioned culvert in the highway, thus discharging the water from said drain to and upon complainant's low lands. This drain is from 4 to 6 feet in depth, except at its commencement and terminus, where it is 30 inches in depth, and the tile that were used were 8-inch tile, except for a distance of about 60 rods at the south end, where 6-inch tile were used. At the time of the construction of this tile drain, two branch tile drains of 4-inch tile were extended easterly therefrom, both located on the north 20 acres of said long 40. One of said branch drains was about 30 rods south from said highway, and the other one about 50 rods south therefrom. Complainant testified that in February, 1914, defendant Chamblin told him that he had agreed to pay defendant Stinchcomb $60, or the difference between 6 and 8-inch tile, for the privilege of an outlet from said Chamblin's land through said tile drain. In their answers both defendants denied any such offer or arrangement, but defendant Chamblin admits in his testimony that there was such a proposition, and that he so told complainant.

It is the claim of the complainant that the effect of this new tile drain was to bring water from the several parcels of land above mentioned in larger quantities,

and more rapidly than ever before, upon said low land of complainant, without providing any outlet or drainage for such additional water, to his great damage. This is strenuously denied by the defendants, and may be said to be the main issue in the case. The questions presented by the record are mainly upon the facts. The trial court saw and heard the witnesses testify, and was better able to judge of the credibility of the witnesses whose testimony was conflicting, than we are. A decree was entered for complainant in accordance with the prayer of the bill. Both defendants have appealed. They claim a prescriptive right of flowage, and also that by the new drain the defendant Stinchcomb has not in any manner increased the flow of water from his land to and upon the land of complainant. While there is testimony to support this claim, we gather from the record that the effect, if not the purpose, of the construction of the new tile drain was, and only could be, to rid defendants' lands of the surplus waters accumulated thereon, and to cast such waters upon the lands of complainant, and in larger quantities and much more rapidly than before, thus at times inundating complainant's land.

While one has a right to drain and dispose of the surface water upon his land, yet he cannot lawfully concentrate such water, and pour it through an artificial ditch or drain, in unusual quantities and greater velocity, upon an adjacent proprietor. It is also well-established that a prescriptive right of drainage can only be exercised in the manner and to the extent that it has been used during the prescriptive period, and this rule is applicable here. *Osten* v. *Jerome*, 93 Mich. 196 (53 N. W. 7) ; *Chapel* v. *Smith*, 80 Mich. 100 (45 N. W. 69) ; *Bruggink* v. *Thomas*, 125 Mich. 9 (83 N. W. 1019) ; *Breen* v. *Hyde*, 130 Mich. 1 (89 N. W. 732) ; *Township of Merritt* v. *Harp*, 131 Mich. 174 (91 N. W. 156) ; *Id.*, 141 Mich. 233 (104 N. W. 587, 108 N. W.

746) ; *Cranson* v. *Snyder*, 137 Mich. 340 (100 N. W. 674) ; *Smith* v. *Township of Eaton*, 138 Mich. 511 (101 N. W. 661) ; *Fraam* v. *Covell*, 170 Mich. 366 (136 N. W. 505).

, We are of opinion that the equities of the case are with complainant, and that his claim is not only sustained by a preponderance of the evidence, but is more in accord with reason and the conceded conditions ، than is that of the defendants.

The decree of the circuit court is affirmed, with costs to complainant.

BROOKE, C. J., and PERSON, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.