BURKE v. FREY.

DRAINS—ALTERATION—FINDINGS—EVIDENCE—INJUNCTION.
> Evidence presented in suit by plaintiff lot owners against defendant owners of property across county highway to enjoin latter from maintaining drains in condition other than they were before action had been taken to fill one drain and to enlarge other *held*, to justify finding of trial court that such flooding of plaintiffs' lands as had occurred was due to water from nearby great lake and abnormally heavy rainfall and that drainage of defendants' lands had been improved rather than impaired, hence plaintiffs were not entitled to relief sought.

Appeal from Monroe; Weipert, Jr. (William J.), J. Submitted January 13, 1960. (Docket No. 56, Calendar No. 47,541.) Decided February 25, 1960.

Bill by Bessie I. Burke, Joseph M. Vigliotti, Dorothy Vigliotti, and other property owners against Ronald Frey and Clara Belle Frey to enjoin obstructing and neglecting to restore prior existing water flowage in drainage ditches. Bill dismissed. Plaintiffs appeal. Affirmed.

*Edward J. McCormick,* for plaintiffs.

*Victor H. Weipert,* for defendants.

CARR, J. Plaintiffs brought this suit to obtain injunctive relief against defendants. The issues involved are wholly factual. It appears that the plaintiffs are the owners of lots in Joel A. Labo Lakeside

subdivision in the township of Frenchtown, Monroe county, on which they have constructed homes in proximity to and facing Lake Erie. Defendants are the owners of land lying north of the lots of the plaintiffs and separated therefrom by a county highway known as Burke avenue.

The bill of complaint filed in the cause alleged that for many years past there were 2 ditches on defendants' property running parallel to Burke avenue immediately north of said thoroughfare, and that the premises of defendants, as well as the highway, were drained thereby. It was further alleged that in the fall of 1955 the defendants proceeded to fill up one of said ditches, and at the same time widened and deepened the ditch lying nearer to the highway. Plaintiffs asserted that as a result of this operation their premises had on some occasions been flooded with water from the land of the defendants because of the inadequacy of the remaining ditch. An injunction was sought to restrain defendants from continuing to refuse to reopen the closed ditch and to require them to maintain it in its former condition. In other words plaintiffs demanded that defendants be ordered to restore the condition that obtained with reference to the drainage of their land prior to the fall of 1955.

Defendants by answer denied the right of plaintiffs to the relief sought, asserting that at the time the work in question was done in the fall of 1955 the 2 existing drains were filled with earth, stumps, logs, and debris of different kinds to such an extent that they were not effective for drainage purposes, and that the ditch in proximity to Burke avenue was cleaned out, widened, and deepened by the Monroe county road commission. They further denied that any flooding of the lots of the plaintiffs resulted from the filling of the ditch in question which, they asserted, was wholly a private drain and inferentially not maintained for the benefit of plaintiffs' property.

On the trial of the case the testimony was materially in dispute with reference to conditions existing both before and after the work by the county road commission in the fall of 1955. It appeared from the testimony of representatives of the commission that the ditch along Burke avenue on defendants' property was enlarged both as to width and depth, and that the earth excavated was thrown upon the land of defendants so that the northerly ditch was completely filled. The testimony also indicated, and without material contradiction, that prior to the work done by the commission both ditches were in such condition as to be practically ineffective for drainage purposes. In places they were completely filled, so that it was possible to operate vehicles across them.

The engineer of the road commission was a witness on behalf of defendants, and testified that the condition existing after the work was done in 1955 was much better from the standpoint of drainage of defendants' land and of the right-of-way of Burke avenue than it had been previously. This witness also testified that the water level in Lake Erie was approximately 3 feet lower than Burke avenue, and other witnesses stated that in times of high wind from the east or northeast water from the lake was forced up the channel into which the ditch emptied, along the ditch, and on occasions over the road bed, thus reaching the lands of the plaintiffs. It was also in evidence that during 1956 and 1957 there were a number of unusually heavy rain storms and the excess water of which plaintiffs complained was ascribed thereto as well as to the coming in of surface water from the lake.

The case is somewhat unusual in that plaintiffs do not claim that defendants collected surface water from their property in drains or ditches and caused it to flow in excessive quantities upon the lands of the plaintiffs, or that such result had been brought about

by the construction and maintenance of artificial barriers to natural drainage. It is the theory of plaintiffs' alleged cause of action that defendants have lessened the efficiency of the method of drainage of their own property and that, in consequence, surface waters on occasions flow from their lands to the lots of plaintiffs. As indicated, the testimony was in dispute as to the reason or reasons for surplus waters occasionally flowing over Burke avenue to the detriment of plaintiffs' property.

After listening to the proofs of the parties the trial judge summarized his conclusions as follows:

"The court is satisfied that the great weight of the testimony shows that the defendants' actions complained of in no discernible way contributed to the floodings experienced by plaintiffs. The testimony indicates that the primary and moving factor in such floodings has been lake water, rather than drainage of surface water from defendants' lands.

"To the extent that any water from defendants' lands contributed to any flooding (if such were found to be a fact, but the Court is unable so to find), it would in any event, under the proofs, not be due to any actionable wrong by defendants. The actions complained of apparently improved, rather than interfered with the pre-existent drainage.

"The defendants' action in filling and leveling the so-called northerly ditch was in connection with the digging by Monroe county road commission of a new and improved ditch—a ditch with larger capacity than the former ditches together. Those ditches had for years been of little or no drainage value—they served rather to flood the lands when the lake water, under wind and lake level pressure, entered through the culvert, and then could recede only slowly through the choked ditches.

"Plaintiff Vigliotti conceded on cross-examination that the floodings of May and June 1956 were the most severe, and that it was a period of abnormal rain, both the Frey and Soncrant properties being

flooded at the time. The rainfall was established to the court's satisfaction to have been of most unusual proportions.

"In conclusion, it should be remarked that Mr. Vigliotti's diagnosis of the source of his trouble was made in good faith. Nothing is more distressing than a flooded home—but nothing is more common when land immediately behind is lower in level and directly connected with as variable a body of water as Lake Erie."

Our examination of the record brings us to the conclusion that the trial judge correctly determined the issue in the case. Plaintiffs failed to sustain their right to the injunctive relief sought. The evidence in the cause does not justify the conclusion that defendants violated, or are violating, any duty that they owe with reference to the protection of plaintiffs' property against surface water. The unfortunate situation existing has apparently resulted from the location of plaintiffs' property with reference to Lake Erie and the occurrence at times of unusually heavy storms. It does not appear that defendants have by any wrongful act on their part increased the exposure to flooding of the plaintiffs' lots. The situation is in a general way analogous to that presented in *Maynard* v. *Hawley,* 331 Mich 123. See, also, *Doll* v. *Muske,* 356 Mich 311.

Counsel for appellants have cited and apparently rely on *Smith* v. *Township of Eaton,* 138 Mich 511; *Elliott* v. *Carter,* 140 Mich 303; *Page* v. *Huckins,* 150 Mich 103; and *Peacock* v. *Stinchcomb,* 189 Mich 301. We have examined these cases and find that each may be distinguished from the situation presented in the case at bar on the basis of the facts involved. As before indicated, we are not concerned in the instant controversy with a situation in which a landowner has, to facilitate the drainage of his own property, increased the natural flow of water upon

lands of his neighbor, nor with the erection of barriers to natural drainage having a like result.

The decree of the circuit court is affirmed, with costs to defendants.

DETHMERS, C. J., and KELLY, SMITH, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.