WOOD *v.* BIGELOW.

| | 115 | 123 |
|---|---|---|
| | 117 | 175 |

1. TAXES—CHANCERY JURISDICTION—CONCLUSIVENESS OF DECREE. The proceedings in chancery for the sale of lands delinquent for taxes on petition of the auditor general are pursuant to a special and limited authority conferred by the statute, and the rule which obtains in cases which fall within the ordinary jurisdiction of chancery courts, that, if the court has jurisdiction of the parties and the subject-matter, its decree, though erroneous, is binding until set aside, is not applicable to such proceedings.

| | 115 | 123 |
|---|---|---|
| | 120 | 638 |
| | 115 | 123 |
| | d121 | 77 |
| | 115 | 123 |
| | f126 | 552 |
| | 115 | 123 |
| | 128 | 279 |
| | 115 | 123 |
| | s73NW | 129 |
| | 132 | 2266 |
| | 115 | 123 |
| | 136 | 2692 |
| | 115 | 123 |
| | 144 | 1 47 |

2. SAME—EJECTMENT—EVIDENCE—CERTIFICATE OF ERROR. A tax deed issued in proceedings under the tax law of 1893 (Act No. 206, Pub. Acts 1893) may be impeached in an action of ejectment by the introduction in evidence of a certificate of error issued by the auditor general under section 98 of the act, which empowers the auditor, upon finding that the tax has been paid to the proper officer within the time limited by law for the payment or redemption thereof, even after a deed has been executed and delivered, to give to the owner a certificate of error in proper form for record.

Error to Wayne; Hosmer, J.  Submitted October 5, 1897.  Decided December 7, 1897.

Ejectment by Walter C. Wood against Elijah E. Bigelow and others.  From a judgment for defendants on verdict directed by the court, plaintiff brings error.  Affirmed.

*James J. Atkinson* (*W. F. Atkinson*, of counsel), for appellant.

*Barnes & Race*, for appellees.

Long, C. J.  This is an action of ejectment.  On the trial below, defendants had verdict and judgment under the direction of the court.

The property in controversy is a house and lot in the city of Detroit, which, it is conceded, is of the rental value of $25 per month.  Elijah E. Bigelow holds the title in fee, unless cut off by the tax deed under which plaintiff claims, the other defendants being his wife and tenants. On December 15, 1892, Mr. Bigelow paid the State and county taxes for that year upon the property, procuring the county treasurer's receipt therefor.  The entry, "December 15, 1892," was made in the column of the tax roll headed, "When Paid," opposite the description of the lot. By some error the property was listed as delinquent for that year, and was included in the petition filed by the auditor general for the sale of the lands delinquent for taxes for 1892 and previous years, also in the order of publication, and was advertised and sold under the decree, and bid in to the State.  Plaintiff became the owner of the State's purchase, and procured his deed from the auditor general.  This deed is the only basis of his claim.  On the trial the defendants introduced in evidence, under objection and exception, the receipt given by the county treasurer, showing the payment of the taxes, and also a certificate from the auditor general, issued after this suit was commenced, showing that plaintiff's tax deed had been canceled by him.  This receipt and certificate were

objected to "because the owner of land who claims to have paid his taxes must set up that claim in the chancery suit out of which the sale grew."

At the close of the testimony, the plaintiff requested the court to direct the verdict in his favor, and for damages at the rate of $25 per month. This was refused, and the plaintiff then asked the court to award him the costs, " as it appeared that plaintiff's title had, since the commencement of this suit, ended through the act of the auditor general." This was also refused.

Counsel now assert that the legal questions here involved are of grave importance if the State is to reap any benefit from these tax sales. Their argument is that in the petition, among other things, the auditor general represented that the taxes for 1892 had not been paid on the lot in question; that, after the necessary steps had been taken to bring the owner of the lot in as a defendant, the auditor general made his proofs, and the chancery court found as a fact that the taxes had not been paid, and that the decree ordering sale of the lot was based on proofs satisfactory to the court that the taxes had not been paid; that, therefore, the decree of the chancery court must stand until regularly set aside by that court, and cannot be attacked in any way in another court. Counsel cite cases which they contend sustain this claim. But these are cases which fall within some well-known head of chancery jurisdiction, and in such cases the rule is settled that, if the chancery court has jurisdiction of the parties and the subject-matter, though the decree be erroneous, it is binding upon both parties until set aside. But the proceedings had in the present case are not within the ordinary jurisdiction of the chancery court. Such jurisdiction is special and statutory, and must be strictly confined to the limits of the statute conferring it. Mr. Justice COOLEY, in his work on Taxation, speaking of the sale of lands for unpaid taxes, lays down the rule that:

"In any judicial proceeding, the court which assumes to act must have that authority of law for the purpose

which is called jurisdiction. This consists in authority over the subject-matter and authority over the persons concerned. * * * Concerning jurisdiction of the subject-matter, it is only necessary to observe that it must come wholly from the constitution or statutes of the State, the common law giving to the courts no authority in such cases. Moreover, that which is conferred is a special and limited jurisdiction. The importance of this fact appears in that familiar principle that nothing is taken by intendment in favor of the action of a court of special and limited jurisdiction, but it must appear by the recitals of the record itself that the facts existed which authorized the court to act, and that in acting the court has kept within the limits of its lawful authority. This principle is applicable to the case of a court of general jurisdiction, which, in the particular case, is exercising this peculiar special and limited authority, as well as to the case of special courts created for such special and limited authority only." Cooley, Tax'n (2d Ed.), 525.

See, also, Black, Tax Titles, § 178.

These proceedings for the sale of the lands in controversy were had under Act No. 206, Pub. Acts 1893. Section 61 of that act provides that the auditor general shall file a petition, "stating therein, by apt reference to lists or schedules annexed thereto, a description of all lands in such county *upon which taxes have remained unpaid for more than one year* prior to the first day of May * * * of the year in which the petition is filed," etc. Prior to the enactment of these statutes, the first of which was passed in 1882, the court of chancery had no power to decree what lands should be sold for taxes, or to prescribe the manner and time of sale. The only power now possessed by the court is that conferred by this act. In the present case the tax had been fully paid before the auditor general filed his petition, and, if the attention of the court had been called to it at the time of making the decree, the lands would have been discharged of the apparent lien, and would not have gone to sale; and, even after sale and confirmation, that court had the power, under the statute, to set aside the sale, if the application had been made therefor within one year after the owner had notice of the

sale.   As was said in *Muirhead* v. *Sands*, 111 Mich. 487, 495:

"The statute (section 70) in terms provides that no sale shall be set aside after confirmation, except in cases where the taxes were paid, or the property was exempt from taxation, and that in such cases the owner of such lands may move the court, at any time within one year after he shall have notice of such sale, to set the same aside."

But this was not the only remedy which the statute gave to the defendants.   Under section 98, Act No. 206, Pub. Acts 1893, the auditor general, upon finding that the tax has been paid to the proper officer within the time limited by law for the payment or redemption thereof, is empowered, even after a deed has been executed and delivered, to give to the owner a certificate of error in proper form for record; and the deed, if not recorded, shall be surrendered when the purchase money is refunded, etc. It is evident that it was the intent that this certificate of error should perform some office.   It was offered in evidence in the present case, and received by the court.   It showed clearly that there was an error in the returning and sale of these lands and in the giving of the deed Under such circumstances, the plaintiff had no right to recover, and the court very properly directed the verdict in favor of the defendants.   That judgment must be affirmed, with costs.

The other Justices concurred.