## MANN v. CARSON.

|   |   |
|---|---|
| 120 | 631 |
| f121 | 70 |

|   |   |
|---|---|
| 120 | 631 |
| f124 | 277 |

|   |   |
|---|---|
| 120 | 631 |
| 126 | 553 |

|   |   |
|---|---|
| 120 | 631 |
| s79NW | 941 |
| 132 | 9266 |

|   |   |
|---|---|
| 120 | 631 |
| 144 | 47 |
| 144 | 48 |

1. TAXES—AUDITOR GENERAL'S PETITION—EVIDENCE OF FILING.

   The fact that the auditor general's petition in a tax proceeding, comprising a part of the tax record, and found in the office of the county treasurer, where such record is required to be kept by section 67 of the tax law ( Act No. 206, Pub. Acts 1893 ), is not marked as filed in the office of the county clerk, is immaterial, where the filing of such petition is recited in the order of hearing thereon.

2. SAME—PROOF OF PUBLICATION—SUFFICIENCY.

   An affidavit showing the publication of "the notice of the sale of state tax lands hereto annexed" sufficiently proves the publication of the auditor general's petition, the order of hearing thereon, and the list of delinquent lands in a tax proceeding, where it is found among the files of such proceeding in the county clerk's office, and a printed copy of such petition, order, and list of lands, taken from the newspaper mentioned in such affidavit, is also found among the files, and is the only paper there found to which the affidavit could refer, although such papers are not attached together, and the affidavit is not entitled in any cause.

3. SAME—PUBLICATION IN NEWSPAPER SUPPLEMENT.

   Publication of notice of a tax sale in a supplement to a newspaper is a sufficient publication in the newspaper.

4. SAME—DESCRIPTION OF LANDS—SUFFICIENCY.

   A description of lands in a published tax list as " 15 entire " in a column headed "Block," among descriptions in " Clark's Addition to the Village of Chesaning," is sufficient.

5. SAME—MANNER OF ASSESSMENT.

   Under the provision of the tax law that lands shall be assessed "to the owner, if known, and also to the occupant, if any; if the owner be not known, and there be an occupant, then to such occupant,"—the owner of lands occupied by another cannot complain that the assessment was made to the owner alone.

6. SAME—STATE TAX LANDS—RIGHT OF PURCHASE.

   Lands acquired by the State under section 68 of the tax law of 1893, providing that, if the county treasurer shall fail to

offer for sale lands included in the decree, they shall be considered as bid off to the State, are subject to private sale, as state tax lands, under section 84 of the act.

7. Same—Form of Conveyance.

A deed of state tax lands in the form of a quitclaim is sufficient to pass title to the grantee. *Dawson* v. *Peter*, 119 Mich. 274, followed.

8. Same—Attempted Payment.

Where the original owner of land held by the State under a sale to it for delinquent taxes applies to the county treasurer to pay all taxes standing against the land, and does pay all taxes which he is advised by that officer are so outstanding, he is entitled to the same relief against a subsequent purchaser of the land from the State as though the taxes for which the land was sold had been paid to the proper officer within the time provided by law; and this though the period of redemption on the sale to the State had expired at the time of such attempted payment.

9. Same — Remedies — Certificate of Error — Writ of Assistance.

These facts, however, cannot be set up by the landowner to defeat the issuance of a writ of assistance to the holder of the tax title, but resort must be had to one of the remedies prescribed by sections 70 and 98, respectively, of the tax law, *i. e.*, a motion to set aside the sale (unless barred by lapse of time), or an application to the auditor general for a certificate of error.

10. Same—Procedure.

But the Supreme Court will, in its discretion, defer the issuance of the writ of assistance, to enable the landowner to avail himself of the statutory remedy.

Appeal from Saginaw; Wilber, J. Submitted November 16, 1898. Decided July 11, 1899.

Petition by Mary E. Mann against George W. Carson for a writ of assistance. From an order denying the writ, petitioner appeals. Reversed.

*Williams & Wilson*, for petitioner.

*G. W. Davis*, for respondent.

HOOKER, J. Mrs. Mann purchased a parcel of land from the State, the same having been bid in for the State for the taxes of 1891 and 1892. In due season she filed her petition for a writ of assistance. The defendant answered, alleging title, and attacking the validity of the tax proceedings and decrees upon several grounds. The circuit court denied the relief prayed, and the petitioner has appealed.

The answer raises the following points:

1. That the petitions of the auditor general were not filed, and therefore the court did not obtain jurisdiction of the tax proceedings. This applies to the taxes of 1891 and 1892. The precise defect appears to be that the petition attached to the tax record, which seems to have been found in the county treasurer's office, had no filing by the county clerk upon it.

2. That the order of publication was not published as required by law.

3. That no decree was made for the sale of the land in question for the tax of 1892.

4. That on October 21, 1895, the defendant applied at the county treasurer's office for a statement of all taxes against the premises, that he might pay all taxes and charges against them, and was told the amount by a clerk in charge of the office; and that he then and there paid the amount given him, and supposed he had paid all taxes and charges against the land.

5. That the premises were, during 1891 and 1892, in the care and possession of his brother, who had personal property from which the taxes might have been collected had the land been assessed to him, as required by section 6, Act No. 200, Pub. Acts 1891; and respondent believed such taxes had been paid until he received notice of this proceeding.

6. That he had regularly paid all previous and subsequent taxes.

7. That the land was offered but once before it was struck off to the State, and there was no formal bid made for the State.

In support of the first point, counsel for the appellee asserts that, not only was there no filing upon the petitions, but there were no calendar entries in the cause, and the

petitions were not found in the clerk's office, but were produced by the county treasurer, and had no word written upon them to indicate that they had ever been in the office of the clerk. There is evidence in the record that tax petitions were made, because papers purporting to be such were produced, being offered in evidence by counsel for the appellee, with proof that they were produced by the county treasurer. Section 67 of the tax law of 1893 (Act No. 206, Pub. Acts 1893) requires that the tax record—which, under section 61, includes the petition— shall be delivered to the county treasurer immediately after the decree is made; and it is further provided that it shall remain in the treasurer's office, except as needed in the office of the clerk. It therefore appears that the petitions were found in the proper place. It also appears that various papers purporting to belong to such proceedings were found in the county clerk's office, and, among them, orders of publication signed by the judge of the court. These orders recited the fact of the filing of the petitions. We are therefore of the opinion that there is abundant evidence that these petitions were at some time in the county clerk's office; and, in view of the language of the order of publication, we must ascribe the failure to mark them as filed to clerical omission, not fatal to the proceedings. In *Beebe* v. *Morrell*, 76 Mich. 120 (15 Am. St. Rep. 288), it is said that "a paper is said to be filed when it is delivered to the proper officer, and by him received to be kept on file."

The next defect pointed out by the answer is that in neither instance was there proper proof of publication of the order. Among the proper files in the clerk's office, a paper was found entitled "Affidavit of Publication." It was signed by one Whiting, and stated that he was the principal clerk for printing and publication of the Weekly Courier-Herald, a newspaper published and circulated in the county of Saginaw; that the notice of the sale of state tax lands thereto annexed had been published in said newspaper once in each week for four successive weeks

previous to the date of sale mentioned in said notice, and gave the dates of the several issues of the paper containing it.  No paper was attached to this affidavit, but in the same files there was found a printed copy of the petition of the auditor general, and list of the delinquent lands, and a copy of the order of hearing; these appearing to be printed on what purported to be a supplement to the Courier-Herald.   It is claimed first that the affidavit does not show the publication of the delinquent list, but on its face states that the publication of a notice of the sale of state tax lands was what it was intended to prove, and that this was not explained by a reference to the title of any cause. If we cannot say that the presence of the appropriate copy of petition and order in the files raises a presumption that they were originally attached to the affidavit, we must hold that the proceedings were void, under *Benedict* v. *Auditor General*, 104 Mich. 274.   If, however, such presumption may be indulged, the language of the affidavit should be read with the aid afforded by the accompanying papers, which would show plainly that the publication referred to was the proper one for these proceedings.   The only office of the affidavit is to prove the fact of a proper publication, and when it does this it is sufficient.   From these papers, taken together, no one could be misled by the statement that notice of sale of state tax lands was published, and the publication actually made would be evident.   A closely analogous question arose in the case of *Spaulding* v. *O'Connor*, 119 Mich. 45.   When it is considered that the copy of the supplement found in the files was devoted to a publication of copies of the very papers that appropriately belonged to the affidavit under consideration, and that it had no other use or apparent reason for being there than as part of such affidavit, coupled with the fact that it was the only paper in the files that could have been referred to by that affidavit, and that the separation of such papers by accident or design is easy, we are justified in concluding that they were originally attached, especially where put to-

gether with mucilage, which so corresponded upon the papers as to furnish some support to the claim that they had been stuck together at some time.

The further claim is made that the publication in a supplement was not such a publication in a newspaper as to comply with the law. Newspapers commonly consist of two or more unbound sheets, which are liable to get separated. The designation of one as supplement does not make it less a part of the newspaper. Had that word been omitted, this question would not be here. It strikes us as a most technical objection.

Defendant's third proposition is that no decree was made for the sale of the land in controversy. It is claimed that the list as published for the 1892 tax did not sufficiently describe the premises. The figures and word "15 entire" were printed in a column headed "Block," among descriptions in "Clark's Addition to the Village of Chesaning." We have no doubt of the sufficiency of this description.

It is urged by counsel that the amounts adjudicated against the land were inserted, after the decree was signed, by a clerk in the treasurer's office. No hint of this claim is found, either in the answer or the proof, and we have, therefore, no occasion to pass upon the question.

The fifth ground of defense is that the land should have been assessed to the defendant's brother, who was in possession. The statute referred to in this connection (section 6, Act No. 200, Pub. Acts 1891) contemplates assessment to the owner where known, as in this case.

The next defect mentioned is that on neither occasion of the sale for taxes was the land offered a second time before it was struck off to the State, nor was there a formal bid made for the State. Counsel does not point us to proof that this was not offered a second time before being bid in by the State. But section 68 of the law of 1893 provides that "if, for any reason, the treasurer of any county shall fail to offer the lands lying therein and included in the decree for sale for delinquent taxes thereon, then so many of such lands so included in such decree as shall not be so

offered for sale shall be considered and treated as if bid off to the State by the county treasurer," etc.    It is urged that lands acquired under this section are not subject to private sale by the State under the statute, but we are of the opinion that they are.

This covers all questions specifically raised by the answer except the fourth.    A further point is made in the brief upon the petitioner's deed.    Such deed is in form a quitclaim, and it is said to be insufficient, upon the ground that "it is the universal rule    *    *    *    that, where the statute does not prescribe the form of the deed to be used in conveying lands to purchasers at tax sales, such a form of deed must be used as would, at the common law, have conveyed title."    Counsel cites in support of this proposition:    2 Blackw. Tax Titles (5th Ed.),§772; Black, Tax Titles, § 396; *Waldron* v. *McComb*, 1 Hill, 111.    This question is settled by the case of *Dawson* v. *Peter*, 119 Mich. 274, which is upon all fours with the present case upon this point.

The fourth claim contained in the answer relates to the alleged application of the defendant to the county treasurer to pay taxes and charges.    The evidence upon this subject is confined to the testimony of the defendant.    He produced a tax receipt for the taxes of 1894, bearing date October 21, 1895, and his examination proceeded as follows:

"*Q.* At the time you received this receipt, with what object or purpose did you go to the county treasurer's office?

"*A.* I went there to pay the taxes on that piece of property in town 9, or any taxes which might be against me in the county treasurer's office.

"*Q.* How about block 15?

"*A.* Well, I asked about that, and they gave me that tax there with it, and I asked if there was anything more against the block, and they said there was not.

"*Q.* Did you ask for a statement of all the taxes against the block?

"*A.* I asked for all the taxes against the block, and was there ready to pay all the taxes that was against me in the

county, if there was any other at the time when I was there. They said there was no more taxes against me than that receipt covered; and I paid all that they claimed was against me.

"*Mr. Foote:* We offer that in evidence. The object of that is to show that in 1894 he applied to pay the taxes against the lot, and they told him the taxes covered by that receipt were all the taxes unpaid against the lot.

"*The Court:* You knew in 1891 and 1892 you had not paid the taxes for those years?

"*A.* I knew I had an arrangement for a man to pay them, and calculated he had paid them. He had control of the property. He had the means to pay them with, and I supposed they were paid until a short time ago."

He added:

"The one that gave me that receipt was a young man working in the county treasurer's office, and he is not back there any more."

At this time redemption had expired on the sale for the tax of 1891.

My brethren think that this testimony brings the case within the rule laid down in the cases of *Hand* v. *Auditor General*, 112 Mich. 597; *Wood* v. *Bigelow*, 115 Mich. 123; *Hough* v. *Auditor General*, 116 Mich. 663; *Kneeland* v. *Wood*, 117 Mich. 174; *Kneeland* v. *Hyman*, 118 Mich. 56. But we cannot set aside the sale in this proceeding, as we might perhaps do under a motion seasonably made. But we presume that it is now too late for such a motion, and, if there is any remedy open to the defendant, it is probably by proceedings before the auditor general for a certificate of error. While we cannot deny the writ of assistance, we may exercise a discretion in the premises, and defer its issue, to give the defendant an opportunity to make an application to the auditor general, or to the court if that right is not lost by lapse of time.

The order of the circuit court is reversed, and an order will be entered here directing the circuit court to enter an order that a writ of assistance issue at the expiration of 90 days from this date, unless it shall, at or before that time, be

made to appear that the petitioner's deed has been canceled
by the auditor general, or that proceedings be pending, in
which case it shall be within the power of said court to
vacate said order or further stay the issue of said writ, as
justice may require.    The petitioner will recover costs of
this court.

The other Justices concurred.