## SCHULTE *v.* AUDITOR GENERAL.

TAXATION—VOID SALE—RESALE—CERTIFICATE OF ERROR.

A sale of land to the State for a delinquent tax of 1887 was set aside by the circuit court in 1890 because there was no dollar sign in the decree, and in May, 1901, the land was again sold by the auditor general for the same tax. In January, 1901, the owner of the original title procured a statement from the county treasurer that there was no tax of record against the premises, and in September, 1902, petitioned the auditor general for a certificate of error against such sale, under subdivision 4, § 98, of the tax law (1 Comp. Laws, § 3921), providing for the issuance of such certificate by the auditor where a certificate that no taxes were charged against the property has been given by the "proper officer" within the time limited by law for payment or redemption. In denying the owner's right to such relief, *held:*

(1) That the right to pay the tax to the county treasurer under sections 58 and 59 ceased on the original sale to the

State, and hence such treasurer was not the proper officer to issue the certificate referred to in section 98.

(2) That, such sale having been declared void because of a technicality not affecting the validity of the tax, the auditor was justified in reselling the land under section 138, Act No. 169, Pub. Acts 1899.

*Mandamus* by Frank A. Schulte to compel Perry F. Powers, auditor general, to issue a certificate of error. Submitted November 11, 1902. (Calendar No. 19,635.) Writ denied December 2, 1902.

*Keena & Lightner*, for relator.

*Horace M. Oren*, Attorney General (*Charles W. McGill*, of counsel), for respondent.

*Thomas, Cummins & Nichols*, for William O'Connor, claimant under tax deed.

HOOKER, C. J. Schulte claims to be owner of the original title to premises described in his petition, having purchased them on January 15, 1900, for the benefit of and in trust for the People's Savings Bank of Detroit, taking them subject to a mortgage held by said bank, dated June 28, 1897. He is in possession. In 1887 a reassessed drain tax was included in the taxes for that year, the same having been originally assessed in 1882. In default of payment of this reassessed tax, the property was bid in for the State at a tax sale held for that year. This sale was declared void in the year 1890 by the circuit court for the county of Oakland. In 1900 the auditor general repetitioned, and included this land in the tax sale held in 1901, when the premises were purchased by O'Connor.

On September 6, 1902, petitioner (Schulte) applied to the auditor general for a certificate of error under section 98 of the tax law (Act No. 206, Pub. Acts 1893), said petition being made upon the ground "that a certificate that no taxes were charged against said lands had been given by the proper officer within the time limited by law for

the payment or redemption thereof." The circumstances relied on, as stated in the petition, are that in March, 1897, when the bank proposed to take the mortgage referred to, the relator, as vice-president of the bank, sent the abstract of title of the land to the persons engaged in making and selling abstracts of title in the county where the land is situated for certification, and received back from them a tax statement, showing a cancellation of the tax of 1887 by the circuit judge, and a further certificate that the taxes for 1895 had been paid. Subsequent to January, 1899, he received a certificate from the same persons, in answer to a letter of January 14, 1899, asking for the amount of taxes outstanding for the years 1896, 1897, and 1898, which certificate showed that the taxes for those years were marked "Paid," except those for 1898, and that the roll for that year was not in the hands of the county treasurer. In January, 1901, relator's agent sent to relator a letter from the county treasurer stating that "there is no tax of record against" the premises. "For 1900 tax write township treasurer." The tax for 1900—$23.64—was subsequently sent the town treasurer. On November 27, 1901, relator's agent wrote the county treasurer to advise him of the amount of taxes due for the years 1899 and 1900, and received answer that "taxes of 1899 and 1900 are paid."

On June 15, 1902, relator received notice from O'Connor of his purchase, on May 21, 1901, for $110.45, and claiming that he was entitled to $265.90. About July 19, 1902, he received from O'Connor the statutory notice, with claim of $110.45, together with 100 per cent. and fees provided by law in case relator should choose to redeem. He sent with his petition to the auditor general $119.06, being the purchase price and 6 per cent. interest. The auditor general replied that the sale on the reassessment of 1887 was held void because there was no dollar sign in the decree, whereupon the sale was canceled, and, without reassessment, the lands were included in a later petition,

and a decree was taken for sale in 1901, when O'Connor purchased, as stated. He stated further that no objections were filed to this tax in the year 1890, and, second, that the cancellation and readvertising were done under sections 138 and 139 of the tax law (Act No. 169, Pub. Acts 1899), and that, in his opinion, such taxes were not subject to payment at the county treasurer's office, but to the auditor general only, and that the certificate of the county treasurer did not warrant the cancellation asked, and the application was denied, and the deposit returned to relator. We are now asked to compel the auditor general to cancel by writ of *mandamus.*

The answer of the auditor general to the order to show cause has been anticipated by the foregoing statement made by the auditor general in answer to relator's application. The contention of the relator is reduced to this: *i. e.*, that, by the cancellation of the sale based on the action of the circuit court in holding the decree void, the tax, which was in no way affected, became again a delinquent tax, subject to payment at the county treasurer's office, under the provisions of sections 58 and 59 (Act No. 206, Pub. Acts 1893), the latter of which is said to provide that payment of delinquent taxes may be made at the county treasurer's office at any time before the land is sold. On behalf of the auditor general it is insisted that, after sale and cancellation of the certificate or deed, these lands were not to be treated as delinquent lands within the provisions of sections 58 and 59, but were to be considered in a different class, governed by sections 138 and 139, which are said to specifically provide for their treatment; and, further, that there is no provision under which the county treasurer can have either information as to their condition or authority over them.

The whole controversy appears to be over the amount required for redemption. We are of the opinion that the auditor general has placed the right construction upon these statutes. The land had been sold, and by such sale the right to pay the tax to the county treasurer, under sec-

tion 58, ended.   The sale was afterward held invalid, but it was for a technical defect in the decree, and this defect in no way affected the validity of the tax.   The auditor general had authority, therefore, under section 138, to include this land in a subsequent petition for sale, and did so.   Undoubtedly, the owner might have paid this tax to the auditor general under the provisions of section 138, but there is no express provision authorizing the county treasurer to act further in the premises.   The land is in a class by itself, under the charge and control of the auditor general.   Hence the county treasurer cannot be said to have been the proper officer to give the certificate relied on in the case.   Subdivision 4 of section 98 gives relief to those who have been misled by certificates issued by the proper officers, but this relief, being statutory, applies only to such cases.   We cannot enlarge the statute.

The writ is denied.

MOORE, GRANT, and MONTGOMERY, JJ., concurred.