## COLE v. AUDITOR GENERAL.

1. TAXATION—COURTS OF CHANCERY—LIMITATION OF POWERS.
   1 Comp. Laws, § 3893, in limiting the power of a court of chancery to set aside decrees rendered in tax proceedings, is valid.

2. COURTS OF CHANCERY—POWERS.
   The court of chancery has power to open its decrees to correct errors.

3. TAX SALES—CERTIFICATE OF ERROR—POWER OF AUDITOR GENERAL.
   Subdivision 3 of section 98 of the general tax law (1 Comp. Laws, § 3921), providing that the auditor general may issue a certificate of error where the sale was in contravention of any provision of the act, applies only to errors occurring after the decree, and not to a case where the lands were held as State tax lands at the time the tax petition was filed.

4. SAME—OVERRULED CASES.

> *Gurd* v. *Auditor General*, 122 Mich. 151, in so far as it sustains the power of the auditor general to review and set aside proceedings prior to the decree in a tax case, is overruled.

Appeal from Ontonagon; Haire, J.   Submitted November 20, 1902.   (Docket No. 216.)   Decided February 17, 1903.

Bill by Thomas F. Cole against Perry F. Powers, auditor general, to restrain the issuance of a certificate of error.   From a decree for complainant, defendant appeals. Affirmed.

*C. E. Miller*, for complainant.

*Horace M. Oren*, Attorney General ( *Charles W. Mc-Gill* and *M. J. Sherwood*, of counsel ), for defendant.

GRANT, J.   The respondent was about to issue a certificate of error upon a tax-title deed issued to the complainant.   The main reason for issuing it is that, at the time of filing the petition, the lands were held as State tax lands, and that therefore the sale was void under *Connecticut Mut. Life-Ins. Co.* v. *Wood*, 115 Mich. 444 (74 N. W. 656).   Other objections are also urged.   Complainant thereupon filed this bill to enjoin this proposed action on the part of the respondent, and a decree for a permanent injunction was rendered.

The respondent bases his right to issue such certificate on section 98 of the general tax law (1 Comp. Laws, § 3921), which authorizes him to issue such certificate for four reasons:   (1) That the land was not subject to taxation; (2) that the taxes had been paid to the proper officer; (3) "that such sale was in contravention of any of the provisions of the act;" (4) that a certificate that no taxes were charged against the lands was given by the proper officer within the time limited by law for the payment or redemption thereof. The respondent claims his right to act under the third subdivision above cited, and insists that, under it, it is in his

power to go back of the decree of the court, and review the validity of any of the prior proceedings. In support of this contention he relies mainly upon *Gurd* v. *Auditor General*, 122 Mich. 151 (80 N. W. 1005). The extraordinary power which the respondent claims for himself must be found to be expressly conferred upon him by statute, or it does not exist. It is certainly a very extraordinary power. It may be conceded that the legislature, in conferring this jurisdiction upon courts of chancery,—a jurisdiction which they possess solely by virtue of the statute,— might lodge in the auditor general the power to review the proceedings. We will determine only the question whether it has done so in the present law.

The reason for a change in the tax system of this State is not unimportant. Under the laws prior to 1891, deeds issued under tax proceedings were notoriously invalid. The legislature sought to remedy this evil by Act No. 200 of the Public Acts of 1891, and Act No. 206 of the Public Acts of 1893, the main features of which are the same as those in the law as it now stands. The object was to give every taxpayer his day in court, so that he might early contest before the court all questions as to the validity of his taxes, and thus secure a better collection of the public revenues. There is little, if any, excuse for a landowner's failure either to pay his taxes, or to contest them in the proceeding instituted for that purpose. As we said in *Cole* v. *Shelp*, 98 Mich. 56 (56 N. W. 1052), every man knows that his land is subject to taxation, and that proceedings will be taken to foreclose the tax lien. Failing to appear when the opportunity is afforded him, he has little cause to complain against the result. The two provisions of the tax law in regard to setting aside the decrees, sales, and deeds thereunder are found in section 98, above cited, and also in section 70 (1 Comp. Laws, § 3893), which section provides that:

"The practice with reference to setting aside such sale shall be the same, so far as applicable, as in a sale in equity on the foreclosure of mortgages: *Provided*, no sale shall

be set aside for inadequacy of price, except upon payment of amount bid upon such sale, with interest and costs: *And provided* further, that no sale shall be set aside after confirmation, except in cases where the taxes were paid, or the property was exempt from taxation. In such cases the owner of such lands may move the court at any time within one year after he shall have notice of such sale to set the same aside, and the court may so order upon such terms as may be just."

Under this clause the taxpayer may appear at any time before confirmation of the sale, and interpose any objection he may have to the decree, and after confirmation his right to have the sale set aside is limited to cases where he has paid his taxes or where his property was exempt from taxation. He must proceed under this clause within one year after he shall have notice of the sale. We held that a decree might be set aside upon a petition in the same suit after one year, where the court had no jurisdiction to enter the decree, and the petitioner showed equities and proper diligence. *Aztec Copper Co.* v. *Auditor General*, 128 Mich. 615 (87 N. W. 895), and cases there cited. It is evident that the legislature sought to limit the power of the court in chancery to set aside decrees rendered in these proceedings. The right of the legislature to so limit the power cannot be questioned. This court has recognized that provision of the law as valid, and has only apparently extended it, where parties have not applied within one year, to cases where the court itself determines that there was no jurisdiction to enter the decree.

If the contention in behalf of the respondent prevail, it must follow that the legislature deliberately conferred upon the auditor general unlimited power over the decrees of the court, while it placed limitations upon the jurisdiction of the court. That the legislature intended to confer upon the auditor general the power to determine the question of jurisdiction, which the court had passed upon, seems hardly probable. A serious question would arise in that event, viz., whether such act of the auditor general would not be judicial rather than ministerial. Sections 70

and 98 must be construed together.   It is apparent that
the grounds numbered 1, 2, and 4, upon which the auditor
general is authorized to issue certificates of error, involve
circumstances under which a taxpayer is justified in pay-
ing no attention to the tax proceeding, because his land is
then either not subject to taxation, or, if it is, he has paid
the taxes, or has a certificate that no taxes were charged
against him.   The taxpayer, under these circumstances,
naturally would know nothing about proceedings to sell
his land until he was actually notified.   He then produces
to the auditor general his certificate or receipt, or proof
that the land was not subject to taxation.   The authority
of the auditor general to issue certificates or to withhold
deeds, under these three subdivisions, has been upheld in
many cases.   *Hand* v. *Auditor General,* 112 Mich. 597
(71 N. W. 160); *Kneeland* v. *Wood,* 117 Mich. 174 (75
N. W. 461); *Wood* v. *Bigelow,* 115 Mich. 123 (73 N. W.
129); *Youngs* v. *Auditor General,* 118 Mich. 550 (77 N.
W. 5); *Mann* v. *Carson,* 120 Mich. 631 (79 N. W. 941);
*Northrup* v. *Maneka,* 126 Mich. 550 (85 N. W. 1128);
*Kneeland* v. *Auditor General,* 113 Mich. 63 (71 N. W.
477).

The power of the court in chancery to open its decree to
correct errors is not disputed.   This is inherent in the
court, and is also conferred by the statute.   So suits in
equity may be brought, under the proper circumstances,
which involve the validity of the proceedings.   There are
many such cases.   *Visscher* v. *Ottawa Circuit Judge,*
116 Mich. 666 (74 N. W. 1013); *Aztec Copper Co.* v. *Audi-
tor General, supra; Kneeland* v. *Hyman,* 118 Mich. 56
(76 N. W. 127); *Muirhead* v. *Sands,* 111 Mich. 487 (69
N. W. 826); *Hough* v. *Auditor General,* 116 Mich. 663
(74 N. W. 1045); *Carpenter* v. *Jones,* 117 Mich. 91 (75
N. W. 292); *Thomas* v. *Auditor General,* 120 Mich. 535
(79 N. W. 812).

It is conceded by the attorney general that *Jackson* v.
*Sloman,* 117 Mich. 126 (75 N. W. 282), was based upon
subdivision 1 of section 98, and not upon subdivision 3.

I find, then, but one case where the auditor general has been held authorized to set aside a decree for defects previous to the decree, or for other reasons than the three specific ones mentioned in subdivisions 1, 2, and 4, and that is the case of *Gurd* v. *Auditor General*, 122 Mich. 151 (80 N. W. 1005), where the publication of the petition and order was held void because published in a newspaper printed in a foreign language. A notice of sale is essential where lands are sold under the decrees or judgments of courts. Usually the notice is subsequent to the decree. Under the tax proceedings, the publication of the petition and order as provided in sections 62 and 66 is anterior to the decree, and serves two purposes: (1) To give the court jurisdiction; and (2) to operate as an advertisement of the sale. The short brief of the attorney general in the *Gurd Case* questioned the power of the auditor general to refund the money paid in that case until the question had been determined by a court of competent jurisdiction, but did not discuss it. The question principally argued by the attorney general was that the State executed a quitclaim deed, and in no way warranted the title. If the point had been made in the chancery proceeding, and the court had held that the publication was valid, would the auditor general have the power to set aside the decree of the court in chancery? Could the contesting taxpayer ignore the decree, and appeal to the auditor general to reverse it? The auditor general certainly possesses no more power over a decree upon default than upon one rendered after a contest. Because the court in chancery may set aside its decree for the reason that the lands had previously been bid in by the State does not authorize the auditor general to set aside a decree for the same reason. It must be conceded that the language we used in the *Gurd Case* justified the respondent in concluding that he had the power under subdivision 3. It might, perhaps, properly be held that the order published in that case was the notice of sale, and that, where fatal defects of jurisdiction appear upon the face of any such proceeding, it renders

any judgment or decree based thereunder absolutely void. The illustration made by my Brother Moore in his opinion in that case is an apt one, viz., that, if no notice had ever been published, the proceedings would have been void. It would not in that case have required any action on the part of the auditor general or on the part of the court to declare them void. Proceedings void upon their face are an absolute nullity, and would be inadmissible as a basis for any right.

To what, then, can subdivision 3 be held to apply? The language applies to the sale. There may be errors of various kinds occurring after the decree, when the power of the court of chancery is ended. In *Connecticut Mut. Life-Ins. Co.* v. *Wood, supra,* there were defects made after the decree and at the time of entering the decree. See page 454, 115 Mich. (paragraph 6 of the opinion). We are of the opinion that the statute must be held to apply to cases of this character, and not to 'those matters which are involved in and are foreclosed by the decree of the court. In several cases we have used language directly holding that the decree of the court upon all those matters necessarily involved in the proceedings cannot be attacked collaterally. In *Muirhead* v. *Sands, supra,* which was a bill filed by the complainant, the owner of the tax deed, to quiet his title, after disposing of five objections, we said, speaking through Justice Montgomery:

"The other questions presented relate to the regularity of the proceedings prior to the decree. We must hold that these questions were all foreclosed by the decree."

In *Peninsular Sav. Bank* v. *Ward,* 118 Mich. 87 (76 N. W. 161, 79 N. W. 911), in an action of ejectment, the precise objection to the decree and deed thereunder was made as is now made; and we there said, speaking through Justice Hooker:

"But this question cannot be raised collaterally. The decree has determined the contrary. * * * The only way to reach such questions is in a direct proceeding, or possibly in equity, under proper circumstances."

In *Cook* v. *Auditor General*, 124 Mich. 430 (83 N. W. 96), while it is true that it was not necessary to a decision of the case, yet this question was directly involved, and the same objection to the deed was made there that is made here, and we said that this and other reasons insisted upon for the *mandamus* "relate to matters that are foreclosed by the decree, and which could only be raised in a direct proceeding in the case." In *Kneeland* v. *Wood*, *supra*, we pointed out the two remedies provided by the statute.

The object of the statute, and of the chancery proceedings thereunder, would be largely nullified if the auditor general had the power to inquire into all the proceedings anterior to the decree, and determine whether they were sufficient to give the court jurisdiction. We do not think the statute confers any such jurisdiction. If the legislature had intended to confer this extraordinary power upon the auditor general, it would have been entirely unnecessary to specify the causes mentioned in subdivisions 1, 2, and 4. The general power of subdivision 3, as claimed by respondent, or a single general provision, would have covered the entire ground. To hold that the auditor general is clothed with power to set aside the deeds for the three reasons, numbered 1, 2, and 4, mentioned in section 98, and that subdivision 3 is limited to proceedings after decree, harmonizes the statute, and gives all its provisions a reasonable construction. The reason for conferring this authority to cancel deeds for causes existing before suit is stated above. Fatal defects existing after the sale are very properly placed within the power of the auditor general to correct. In so far as the case of *Gurd* v. *Auditor General* can be held to sustain the power of the auditor general to review and set aside proceedings prior to the decree, it is overruled.

The learned attorney general urges that after the decision in *Connecticut Mut. Life-Ins. Co.* v. *Wood*, rendered in December, 1897, the auditor general has exercised the power now claimed, and has canceled deeds in many in-

stances where it appeared to him that they were invalid. The power of the auditor general was not even mentioned in that suit. It was a suit in chancery,—the proper forum for the determination of the questions involved. It gave the auditor general no right to believe that he possesses the same power to set aside these deeds as do courts in chancery. This practice of the auditor general for less than four years has not established a construction binding upon the courts.

The decree is affirmed.

The other Justices concurred.