HOFFMAN *v.* AUDITOR GENERAL.

1. TAX SALES—DUTY OF PURCHASER—STATE TAX LANDS.
   One purchasing land at a tax sale is obliged to purchase the same from the State tax land list, and pay the taxes, interest, and charges remaining unpaid thereon, for all years for which such land is held as State tax land. 1 Comp. Laws, § 3893.

2. SAME—PURCHASE AND PAYMENT.
   A purchase of State tax land by the original owner is in effect a payment and redemption.

3. SAME—AUDITOR GENERAL—CANCELLATION OF SALE—MANDAMUS.
   The original owner of land purchased the same at a tax sale conducted by a deputy county treasurer, and applied to him "to pay, redeem, or purchase all the taxes then remaining a lien on the land," and was informed by him that the land was not held for the taxes of any other years, though it was in fact then held as State tax land, and subject to sale. Subsequently the auditor general canceled the purchase as void because such owner had not purchased also from the State tax land list, and, sold the land to another. *Held*, that *mandamus* would lie to compel the auditor to cancel the last sale and permit the owner to redeem. 1 Comp. Laws, § 3921. *Schulte* v. *Auditor General*, 131 Mich. 676, distinguished.

   136 MICH.—44.

4. SAME—DEEDS—EXCEPTION FROM WARRANTY—NOTICE.
The fact that the warranty clause in the deed by which such
original owner acquired his title expressly excepted all taxes
and tax claims subsequent to a certain year, prior to that for
which the land was sold to the State, was not conclusive
against his right to such relief.

*Mandamus* by Frank Hoffman to compel Perry F.
Powers, auditor general, to cancel a tax sale and permit
relator to redeem. Submitted February 2, 1904. (Cal-
endar No. 20,230.) Writ granted June 25, 1904.

*Hovey & Stockwell*, for relator.

*Charles A. Blair*, Attorney General (*McFarlan &
Wilson*, of counsel), for respondent.

CARPENTER, J. Relator became the owner of the land
in controversy in 1900. He acquired his title by warranty
deed, and the covenants of warranty therein excepted
"the taxes of 1895 and subsequent years, and all claims
arising therefrom." At this time the lands were delin-
quent for the taxes of 1895, 1896, 1897, 1898, and 1899.
The land was sold for the nonpayment of the taxes of
1897 and 1898, and the State acquired an absolute title
thereunder in May, 1901, and May, 1902, respectively.
The land was advertised for sale for the taxes of 1899, and
for the reforeclosed taxes of 1896, at the May sale in 1902.
Relator attended this sale and bid in the lands for those
taxes, and then applied to the deputy county treasurer
conducting the sale "to pay, redeem, or purchase all the
taxes then remaining a lien on the land." The said
deputy county treasurer made out and delivered to relator
tax certificates of sale for the years 1899 and 1896, and in-
formed him that said lands were not held for any other
years, though at that time the land was held as State tax
land, subject to purchase, for the taxes of 1897 and 1898,
above described.

Subsequently the Flint Land Company, Limited, ap-
plied to respondent to purchase these lands, and deposited

sufficient money to pay the taxes for 1895, 1896, 1897, 1898, and 1899. Respondent thereupon canceled the purchase made by relator on the ground that his purchase was void because he had not at the same time purchased from the State tax land list for the taxes of 1897 and 1898, and deeded the land to said Flint Land Company, Limited. Relator thereupon presented a petition to respondent, setting forth the foregoing facts, tendered the amount due for the payment of the taxes of 1897 and 1898, demanded a vacation of the order canceling his purchase, a cancellation of the conveyance to the Flint Land Company, Limited, and permission to purchase and pay the taxes for all other years charged against the land. Respondent refused to comply with this request, and this *mandamus* is sought to compel such compliance.

Relator's right to relief depends upon the proper construction of subdivision 4 of section 98 of the tax law (1 Comp. Laws, § 3921). This provision authorizes the auditor general to issue a certificate of error when " a certificate that no taxes were charged against said lands has been given by the proper officer within the time limited by law for the payment or redemption thereof." It is contended by respondent that relator does not bring himself within this provision; that the deputy county treasurer was not the "proper officer" therein described; and that "the time limited by law for the payment or redemption" from said taxes had long before elapsed. Let us consider these contentions.

Relator, having bid in the land for the taxes of 1896 and 1899, was obligated by law (section 70 of the tax law; 1 Comp. Laws, § 3893) to "become the purchaser from the State tax land list, and pay the taxes, interest, and charges remaining unpaid thereon," for all years for which such land was held as State tax land. See, also, section 80 (1 Comp. Laws, § 3903). And it was likewise the duty of the deputy county treasurer conducting the sale to sell such tax interests to relator. While this transfer would have been, in form, a purchase by relator of the

State's interest, it would, according to elementary principles, because relator owned the land, have been, in effect, a payment and redemption. *Connecticut Mut. Life-Ins. Co.* v. *Bulte*, 45 Mich. 113 (7 N. W. 707). It follows that relator had a right to pay and redeem from these taxes at the time he was prevented from acquiring them by the officer who denied their existence, and that said officer was charged with the duty of making a sale to him which would effectuate that redemption. It is true,. relator's right to pay and redeem, under this reasoning, had just come into existence, and the time limited by law to redeem from the original sale had expired. But we should be giving this statute a very narrow construction if we should say it did not apply to all cases where one has a right by law to pay and redeem. And the statute, we have held, is to receive not a narrow, but a, broad, construction. In *Kneeland* v. *Wood*, 117 Mich. 176 (75 N. W. 462), this court said:

"We think the provisions of this section should receive a liberal construction, to the end that a taxpayer justly entitled to relief may not be cut off from all remedy. *Hand* v. *Auditor General*, 112 Mich. 597 (71 N. W. 160). It is held in numerous cases that if a landowner in good faith applies to the proper officer for the purpose of paying his taxes, and is prevented by the mistake, wrong, or fault of the officer, such attempt to pay is equivalent to payment."

See, also, *Wood* v. *Bigelow*, 115 Mich. 123 (73 N. W. 129); *Hough* v. *Auditor General*, 116 Mich. 663 (74 N. W. 1045); *Kneeland* v. *Hyman*, 118 Mich. 56 (76 N. W. 127).

It was therefore the duty of the auditor general to comply with the relator's request, and *mandamus* is the proper remedy to enforce that duty. *Hubbard* v. *Auditor General*, 120 Mich. 505 (79 N. W. 979).

This case is distinguished from *Schulte* v. *Auditor General*, 131 Mich. 676 (92 N. W. 417), relied on by respondent, by this important circumstance: There the official

applied to—the county treasurer—had no authority to receive payment of the tax, while here he had such authority.

It is urged that relator was not misled by what the ·deputy county treasurer told him, because he was informed by his deed that these taxes were unpaid. We cannot accept this argument. While relator's deed did not covenant that the taxes were paid, it certainly did not inform him that they were unpaid. Notwithstanding the exception in the deed, we are bound to accept the averment of the petition that relator believed the information communicated by the deputy county treasurer.

It is only proper that we should say that respondent's answer has not specifically admitted many statements in relator's petition, which, under the rule, we assume to be true because they are not denied.

A *mandamus* will be issued as prayed, with costs against the Flint Land Company, Limited, who, it appears, has defended this suit.

MOORE, C. J., MONTGOMERY and HOOKER, JJ., concurred. GRANT, J., did not sit.