AUDITOR GENERAL *v.* CLIFFORD.

1. EVIDENCE — JUDICIAL NOTICE — SUPREME COURT — TAX PROCEEDINGS

This court cannot take judicial notice of facts contained in the records of tax proceedings.

2. TAXATION — SALES — CANCELLATION — AUTHORITY OF AUDITOR GENERAL.

The auditor general has no authority on application by a purchaser from the State to cancel his deed to cancel also the tax sales upon which the State's title to the land is founded.

3. SAME—LIEN FOR TAXES—PRIORITY.

The general rule is that a sale and conveyance in due form for taxes extinguishes all prior liens, whether for taxes or otherwise, and a purchaser, at such a sale, of lands upon which

there is no apparent prior unsatisfied lien for taxes, cannot be prejudiced in his title by the subsequent action of the auditor general in canceling a prior sale and reasserting the State's lien for the taxes of prior years.

Appeal from Midland; Dodds, J.   Submitted April 27, 1905.   (Docket No. 189.)   Decided April 30, 1906.

Petition by Perry F. Powers, auditor general, for the sale of land delinquent for taxes: On objections filed by Charles Clifford and Thomas E. McCann.   From a decree for petitioner, contestants appeal.   Reversed, and petition dismissed.

*John E. Bird,* Attorney General, and *Ray Hart,* Prosecuting Attorney (*Charles W. McGill* and *George L. Hauser,* of counsel), for petitioner.

*Elbridge F. Bacon* (*J. J. Speed,* of counsel), for contestants.

OSTRANDER, J.   Certain lots in the city of Midland were returned delinquent for the taxes of 1881, 1886, 1887, and 1888.   In course of time they were bid in to the State—for taxes of 1881 in 1885, for taxes of 1886 in 1888, for taxes of 1887 in 1890, and for taxes of 1888 in 1891. They were held by the State until January 24, 1894, when they were sold to an individual and were subsequently deeded to him.   In December, 1900, an assignee of this purchaser made application to have the sale canceled and the money paid refunded.   This application contains the statement:

" The purchase and deeds are void, and we desire to have the money refunded.   *Cockburn* v. *Auditor General* [120 Mich. 643], *Hughes* v. *Jordan* [118 Mich. 27], and *Hubbard* v. *Auditor General* [120 Mich. 505], would seem to cover all these purchases."

There were other lands than those in question described in the application.   In compliance with this request, the auditor general did cancel the sale and refund the money, the following memorandum being made in his office:

"Sale canceled refunded on release January 18, 1901; taxes of subsequent year not paid; no dollar mark in decree; voucher 124, 1901."

The auditor general not only canceled the sale to the individual; he canceled the sale of the lands, for the various years mentioned, to the State, and in his petition, filed in the year 1902, he prayed for and obtained a decree against and an order for the sale of these lots for the taxes of each of said years except the year 1886. It is from this decree that respondent Clifford has appealed.

The interest of respondents in the premises arises in this way: The same lots were returned delinquent for the taxes of the years 1896 and 1897. They were sold to the State in 1899 for the taxes of 1896, and to respondent's assignor, in 1900, for the taxes of 1897, he also purchasing the State bid for the taxes of 1896. The auditor general duly issued a deed upon the sale for the taxes of 1896, dated October 29, 1900. All proceedings connected with the decree and sale of the lots for 1896 and 1897 are conceded to be regular and valid. Respondent Clifford, March 14, 1902, contracted to sell the land to respondent McCann. The auditor general refunded, upon the cancellation which he made, $385.55, which was the amount paid to the State and interest at 6 per cent. from February 2, 1894. The decree appealed from finds the amount due the State to be $603.22, which is made up of the said taxes, with interest at 12 per cent. from the date of the return of said taxes to the county treasurer.

At the time the respondent's deed was issued, the State had apparently no lien or claim against the lots in question for taxes of prior years, and it acquired the lien, now asserted, for which decree has been entered, by later action of the auditor general. In the answer of respondents, various matters claimed to affect the merits are set up. This court is limited to the consideration of those objections which deny the right of the auditor general to cancel and refund, and the right to enforce against the land the taxes, sales for which were so canceled and set

aside. The record fairly discloses that the person to whom the lands were sold in February, 1894, did not at the time of his purchase pay taxes for subsequent years. The application for cancellation, and the memorandum referred to, indicate that the auditor general assumed that for this reason his right to cancel the deed given to the purchaser, and to refund to him the money he had paid existed. But the record does not disclose the reason for also canceling the sales to the State. True, the same memorandum states, "no dollar mark in decree," and it might be inferred, if the right to infer was open, that the absence of the dollar mark in the decree, in each of the years, was the reason for setting aside the sales to the State. It is said in the brief for the auditor general that the sale in 1885, under the law of 1885, for the tax of 1881, was void because that law was not retroactive in operation. This may be conceded. The sale in 1888, for the taxes of 1886, was, it is said, void because of failure of the board of supervisors to equalize the valuations for that year; the sales in 1890, for tax of 1887, and in 1891, for tax of 1888, were void because of the absence of the dollar mark from the tax record and decrees. This court cannot take judicial notice of facts contained in the records of tax proceedings, and there was introduced no evidence of the truth of these assertions. The facts are not admitted. Neither had the auditor general the right to cancel these sales. *Cole* v. *Auditor General*, 132 Mich. 262.

The principal question presented, the answer to which disposes of the whole matter in controversy, arises upon the contention of appellant that his title cannot be affected by action of the auditor general taken subsequent to his purchase. It is not easy to give to the various provisions of the tax laws constructions which shall have the effect to make a harmonious, complete, and readily applied revenue statute. The general purpose of the laws must be, of necessity, kept in mind and given effect. Plainly, however, cases may arise, the case at bar being an exam-

ple, where the broad right of the State to receive its taxes must yield to the particular rights of an individual who has, in reliance upon the tax laws, purchased from the State, in strict conformity with the law, the last and the only apparent title of the State. When respondent acquired his title, all taxes upon the premises in question had been paid. The State had no title to and no lien upon them. To acquire a lien, the State had first to refund, to the earlier purchaser, the moneys paid by him, annul the records and seek to re-establish and enforce the original demand. If this demand may so be enforced, there is introduced into the system, not only opportunity for gross injustice to the individual, but also, what is of at least equal importance, an element of uncertainty likely to defeat the general purpose of the law. As was well said by this court in *Robbins* v. *Barron*, 32 Mich. 36, 39, where an attempt was made to impose upon premises a lien quite similar in its alleged inception and its effects to the one here considered:

"Establish such a doctrine, and very few would be willing to become purchasers at tax sales, thereby assuming the responsibility of paying large sums of money to relieve the land of such lien in order to reap the benefit of their purchase."

The case presented is not like *Auditor General* v. *Newman*, 135 Mich. 288, for the reason that in that case the cancellation of sales for prior years had been made and the lien claimed by the State was apparent when the respondent purchased for the taxes of subsequent years. The general rule is that a sale and a conveyance in due form for taxes extinguishes all prior liens, whether for taxes or otherwise. This rule is one of necessity, growing out of the imperative nature of the demand of the government for its revenues. Tax liens take priority in the reverse order of other liens. It is not required, in this case, that we adopt, broadly, the rule laid down in cases like *State* v. *Camp*, 79 Minn. 343; *Brewer* v. *District of Columbia*, 5 Mackey (D. C.), 274; *District of Columbia*

*v. Hufty,* 13 App. Cas. (D. C.) 175; *Dougherty* v. *Henarie,* 47 Cal. 9; *Irwin* v. *Trego,* 22 Pa. 368; *Preston* v. *Van Gorder,* 31 Iowa, 250; *Bowman* v. *Thompson,* 36 Iowa, 505; *Law* v. *People,* 116 Ill. 244; *Sayles* v. *Davis,* 22 Wis. 225, and others.   It is probable that the decisions in *Auditor General* v. *Newman* and prior cases cannot stand along with the decisions in some of the cases above referred to.   The tax laws in different jurisdictions vary greatly.   We are, however, required to hold, in view of the facts in this case, that the demand of the State may not be asserted against the respondent, or, what is the same thing, the premises, for the reason that upon his purchase of the title to the lands there was no apparent prior unsatisfied lien thereon for taxes.

The decree is reversed, with costs, and a decree will be entered here perpetually discharging the premises in question from any lien for the taxes, the collection of which is sought in this proceeding to be enforced.

GRANT, BLAIR, MONTGOMERY, and MOORE, JJ., concurred.