FELDKAMP *v.* ERNST.

1. WATERS AND WATERCOURSES—OBSTRUCTION—SURFACE WATERS.
In a suit to enjoin the maintenance of a dam on premises of the defendant, resulting in turning on to complainant's property water which had previously crossed over defendant's land, thereby increasing the volume of water which flooded complainant, evidence, although in conflict, sufficiently sustaining complainant's contention that the dam turned all the water away from defendant's lands that they would naturally receive, and that defendant's obstruction caused the same to flow across complainant's property, warranted a decree granting the injunction.

2. ELECTION OF REMEDIES—WATERS AND WATERCOURSES—INCONSISTENT CLAIMS—ESTOPPEL—DAMAGES—CONTINUING TRESPASS.
The commencement of an action at law for flooding complainant's lands, where no declaration was filed, did not bar complainant's right to obtain an injunction; for complainant might have pursued his legal remedy to recover such damages as he had sustained up to the time of commencing his action and a judgment would not have barred a subsequent action at law. The remedies at law and in equity were not so inconsistent as to warrant an application of the rule of election.

3. JUDGMENT — ESTOPPEL — PARTIES — INJUNCTION — WATERS AND WATERCOURSES—DAM.
The fact that complainant, who asked for an injunction to compel the removal of a dam, had been a witness for another injured party in an action at law for damages, did not preclude his right to equitable relief, although, by stipulation, prospective damages had been recovered by the plaintiff in the cause, wherein complainant was not, however, made a party. Nor did the fact that complainant had agreed that if the case were lost, he would pay part of the expense, prevent him from seeking the right to an injunction.

Appeal from Washtenaw; Kinne, J. Submitted

June 20, 1913.   (Docket No. 70.)   Decided November 3, 1913.   Rehearing denied January 5, 1914.

Bill by George J. Feldkamp against Christian Ernst for an injunction.   From a decree for complainant, defendant appeals.   Affirmed.

*Frank A. Stivers*, for complainant.

*A. J. Waters*, for defendant.

BROOKE, J.   The bill of complaint in this cause is filed for the purpose of securing a mandatory injunction, compelling defendant to remove an artificial dam built upon his own lands, it being alleged that the purpose and effect of said dam is to deflect the natural course of surface waters, thus casting them upon the lands of one Finkbinder, and thence upon the premises of complainant.

A map introduced by defendant, the accuracy of which is questioned by complainant, will yet serve to indicate the relative positions of the several properties involved and the elevation of the lands in a general way.   For convenient reference we publish it herewith.

A glance at the map will indicate that the lands of defendant, as well as those of Hotrum and Finkbinder, slope towards the north.   The surface waters collecting upon the southerly portion of all the properties is finally collected through natural ways upon the northwest corner of Hotrum's lands, immediately east of defendant's line and south of Finkbinder's.   At that point the ground seems to be practically level. To drain this area, Hotrum, some time prior to the year 1898 (probably 1894), ran a double plow furrow, indicated on the map as "Hotrum Ditch."   This furrow did not extend north to the line between Hotrum and Finkbinder, and, it is claimed by complainant, did not in the slightest degree change the natural

course of the surface waters. Defendant insists,
however, that after Hotrum made the ditch in ques-
tion the waters were diverted in a northwesterly di-
rection upon his lands, instead of going, as formerly,

in a northeasterly direction upon and across the lands
of Finkbinder and onto complainant's lands. De-
fendant therefore in 1898 built the dam in question.
It is variously described in the record as a structure

from 12 to 50 feet in length and from 2½ to 5 feet in height. Some time after the completion of the dam Finkbinder commenced a suit at law against defendant Ernst for the recovery of damages growing out of the alleged wrongful diversion of the waters by means of the dam. Upon the first trial of this suit Finkbinder recovered a judgment against Ernst, which was reversed in this court because of erroneous instructions to the jury. *Finkbinder* v. *Ernst,* 126 Mich. 565 (85 N. W. 1127). A second trial again resulted in a judgment against defendant Ernst in the sum of $175. This judgment against defendant Ernst was affirmed by this court *(Finkbinder* v. *Ernst,* 135 Mich. 226 [97 N. W. 684, 100 N. W. 180]) in June, 1904. While this litigation was in progress complainant herein had also commenced a suit at law against Ernst, which was not prosecuted, and was finally terminated by a default judgment against complainant. After the termination of the Finkbinder litigation complainant demanded that Ernst remove the dam. This being refused, he filed his bill of complaint in September, 1905. Upon the hearing, which did not occur until 1912, each party to the controversy swore 14 witnesses. These witnesses were examined, cross-examined, and re-examined at great length by able counsel upon both sides. The record is further augmented by the introduction of certain evidence taken in the law case of *Finkbinder* v. *Ernst.*

The learned circuit judge who tried the case, and who, from his long residence and official activity in the county in which it arose, may be supposed to have had a more or less valuable acquaintance with the witnesses, and who furthermore had the advantage of noting the manner in which each witness gave his testimony, filed the following opinion:

"To my mind this case is not free from doubt. It is evident that both parties hereto earnestly believe

that each is right. If it did not involve so great expense I should be disposed to summon a jury who might give their verdict upon the testimony presented, but this course is not ·practicable. The subject-matter of this litigation, although between other complainants, has been twice before this court and twice in the Supreme Court. A large amount of time and money has been consumed in this controversy. I find it impossible to divide this responsibility, or its burdens, between the parties thereto. Apparently the one must win and the other lose. The defendant has raised and argued certain propositions of law intended as a bar to this suit, which do not seem to me to be applicable to the facts in this case.

"I think the case should be disposed of upon the merits as presented by the evidence, and herein lies the serious trouble. Men of high standing and excellent reputation in their communities have been arrayed against each other in the giving of their testimony. The only explanation that I can find of this fact must lie in the very nature of the subject-matter of this litigation. It is evident that the memories of those witnesses, and the impressions which they now may form respecting the situation of these premises, differ radically. At the request of counsel, I, in their company, inspected these premises, with no other result than the conviction that I must depend on the testimony of the witnesses.

"I know of no standard whereby these impressions may be measured with any certain accuracy. It has seemed to me that the importance of this matter to either party hereto has been greatly exaggerated. I think it would be difficult and perhaps unjust not to regard the two verdicts which have already been rendered in this matter as having at least some important instruction, although not necessarily binding upon the parties to this cause. The respective counsel in this case have done all in their power to aid me to a right conclusion, and especially Mr. Waters, counsel for defendant, could not have done more if the case had been his own.

"My conclusion in this matter is that the defendant made a mistake when he erected this dam, and that it ought to be removed. I do not think that its loss or removal will cause any serious loss or inconven-

ience to the defendant. I think that the costs to the complainant should not exceed the sum of $50. A decree may be made in correspondence to this opinion."

We have read the entire record with care; and, while the case is not free from doubt (no case can be free from doubt in the face of such conflicting evidence), we have reached the conclusion that the complainant established the following facts by a fair preponderance of the evidence:

(1) From the earliest period mentioned in the record, in times of high water, the water went, in part at least, over defendant's lands to the northwest; (2) that the water had flowed in a much greater measure over defendant's lands for two or three years prior to 1894, in which year Hotrum made his ditch; (3) that in making the ditch, Hotrum did not change the course of the water as it then ran; (4) that through the erection of the dam in question in 1898 defendant turned all of the water away from his lands, some of which they had received from the earliest times, and much, if not all, of which he had, through natural causes, been burdened with for some seven years.

We are quite aware that there is plenty of evidence in the record contradicting point-blank each of the foregoing propositions, but the evidence in favor of them we think preponderates. While the fact that two juries have found the dam to be an unlawful structure, and have assessed damages against defendant on account of its maintenance, has no direct bearing upon the question, it nevertheless tends to indicate that the testimony seems to affect all unprejudiced minds in a similar manner. The conclusions, too, of the learned circuit judge, who has three times gone over this vexed question, should not be, and are not, without weight. While the cause is tried in this court *de novo*, due consideration should always be given to the opinion of the court below upon questions of fact. The reasons for doing so in this case

are, as pointed out, much stronger than is usual. Upon the merits, then, we find ourselves in **agreement** with the findings of the circuit judge.

But it is urged on behalf of defendant that complainant cannot succeed in a court of equity because, having commenced a suit at law, for damages growing out of the erection of the dam in question, he should be held to have elected his remedy—a remedy inconsistent with the one he now seeks. Are the two remedies inconsistent? We think not. No declaration was filed in the suit at law, a summons only was served. Complainant in this cause (plaintiff there) certainly had a right to pursue his legal remedy against defendant for the recovery of damages he had sustained up to that time. Had he recovered a judgment for such damages, it would have been no bar to a second or third legal action for subsequently accruing damages. Nor would such a judgment have prevented him from seeking the aid of a court of equity to secure the abatement of the dam if defendant persisted in maintaining it.

Defendant further contends that complainant should be held to be estopped from prosecuting this action for the following reasons: In the case of *Finkbinder* v. *Ernst* by stipulation of counsel it was agreed that the damages were claimed on account of *permanent* injury to the soil, and upon the theory that the dam was to remain. In that case complainant was a witness, and had agreed with Finkbinder that if the case were lost he (complainant) would pay some portion of the expense. It further appears that the gentlemen who represented Finkbinder in his suit now appear as solicitors for complainant. From these facts counsel for defendant argues that, having aided Finkbinder in securing a judgment upon the theory that the dam was to be permanent, complainant should not now be permitted to seek its abatement. It is not shown that complainant had any con-

trol of the theory upon which *Finkbinder's Case* was tried, nor that he had any interest in the judgment. He was interested in establishing the illegality of the structure, and, having such interest, we can see no impropriety in his having agreed, in case of loss, to share the costs with Finkbinder. He was not a party to the suit, and was in no wise bound by the judgment.

It is said by counsel for defendant that in this case injunctive relief should be denied because to grant it would cause much greater hardship and damage to defendant than its denial would cause to complainant. We do not think this fact very clearly appears in the record, and the court below, after a personal examination of the premises, was of the opinion that the removal of the dam would not cause any serious loss or inconvenience to defendant.

In their zeal for the interests of their respective clients counsel for both parties have in their briefs permitted themselves the use of language acrimonious, if not abusive. While due allowance must be made for partisanship, it should not be forgotten that the administration of justice is never aided by the substitution of invective for argument.

The decree of the court below is affirmed.

STEERE, C. J., and MOORE, MCALVAY, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.